FEATHERSTON *et al. vs.* RICHARDSON, administrator.

A deed contained the following provisions : " Now the further consideration (after the formal consideration of $1.00) of this deed is that the said Featherston (the grantee) is to pay off and discharge said mortgages (previously described), he contracting to be liable for the payment of the same only so far as the proceeds of the land will go towards their payment, in no case assuming any individual liability except to faithfully discharge his duty in managing or disposing of the land so as to make it or the proceeds thereof, if possible, pay off and discharge said mortgages, and to take the trouble and vexation of managing and disposing of the same off the hands of said Richardson (the grantor); and whenever said F. shall in any way pay off or satisfy said mortgages, then all of said lots and parts of lots of land shall belong absolutely to him, discharged from all claims and incumbrances whatever except those hereinafter mentioned and specified," (the mortgages and a right of homestead in the land) which were " to hold in abeyance and to prevent going into full effect the absolute right of G. W. Featherston :"

*Held*, that the deed conveyed the title in trust for the purpose of paying off the mortgages, and with the vesting of an absolute title conditioned upon the grantee's performance thereof; and on entire failure so to do, a bill would lie to set aside the deed or to compel the execution of the trust.

(*a.*) The case is strengthened by allegations of application of the property by the grantee to his personal use, collusion with his wife, by having mortgages transferred to her, to obtain the property without performing the condition, and the like.

(*b.*) The grantor having died, his legal representative could maintain such a bill, and obtain full relief.

Deeds. Trusts. Title. Equity. Before Judge UNDERWOOD. Polk County. At Chambers. October 10th, 1881.

E. H. Richardson, Jr., administrator, filed his bill against G. W. Featherston and his wife, alleging as follows: E. H. Richardson, Sr., the father of complainant, died on May 23d, 1880, intestate, possessed of a farm in Polk county, containing 110 acres of land. On April 4th, 1881, com plainant was appointed administrator of intestate. On entering upon his duties as such administrator, he found Featherston in possession of the said farm, claiming to hold under the following deed from E. H. Richardson, Sr.:

" GEORGIA—Polk county.

This indenture, made and entered into this 10th day of April, 1876, between E. H. Richardson, Sr., of the state and county aforesaid, and G. W. Featherston of the same place, witnesseth that for and in consideration of the sum of ten dollars to him in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for the further considerations and with the limitations hereinafter mentioned and specified, the said E. H. Richardson, Sr., has this day bargained and sold, granted and conveyed, and by these presents does bargain and sell, grant and convey to the said Giles W. Featherston, his heirs and assigns, the following lots and parts of lots," etc., [describing the property and continuing as follows:] " Whereas, there are incumbrances in the shape of mortgages on all the lots of land conveyed by this deed, given to secure the payment of notes given by the said E. H. Richardson, Sr., to several parties, to-wit: To said Giles W. Featherston, A. Shorter, G. W. West and A. Huntington, amounting in the aggregate to eleven thousand dollars ; now the further consideration of this deed is that the said Featherston is to pay off and discharge said mortgages, he contracting to be liable for the payment of the same only so far as the proceeds of the land will go towards their payment, in no case assuming any individual liability except to faithfully discharge his duty in managing or disposing of said land, so as to make it or the proceeds thereof, if possible, pay off and discharge said mortgages, and to take the trouble and vexation of managing and disposing of the same off the hands of said Richardson ; and whenever said Featherston shall in any way pay off or satisfy said mortgages, then all of said lots and parts of lots of land shall belong absolutely to him, discharged from all claims and incumbrances whatsoever, except those hereinafter mentioned and specified.

" This deed is in no case to be so construed or used as to prevent

said mortgagees from foreclosing their mortgages according to law, nor in any way to hinder or delay them in prosecuting their claims according to law, leaving to said mortgagees the same rights and privileges of proceeding at once, should they think best, in the foreclosure of their mortgages and the collection of the money due on the same, as if this deed had never been made.

" It is further agreed that this deed is not to deprive the said Richardson of his right to have laid off, valued and set apart for the benefit of himself and family out of the lands mentioned herein, a homestead according to law. But said Richardson makes this deed expressly reserving to himself the right to encumber the land with a homestead, to be valued and set apart according to the constitution and existing laws of said state; said homestead when so valued and set apart during its legal existence to hold in abeyance and to prevent going into full effect the absolute right of G. W. Featherston. In testimony whereof," etc. (Signed and attested in the usual manner.)

The bill alleged that Featherston had not paid off the debts as was intended by the parties and required by the deed, but had bought up some of them, caused them to be assigned to him, and in turn had assigned them to his wife, who had assigned them as collateral security; that Featherston had also bought up other claims against the estate, which he threatened to enforce, though in fact settled. By amendment it was alleged that the provisions in the deed were conditions; but if held to be covenants, that the land should be sold to meet them, Featherston being insolvent. It was also charged that decedent had obtained a homestead in said land after the making of the deed; that a receiver had been appointed and sale been made of lands not covered by the homestead; that defendants were seeking to hold the claims open until they should accumulate sufficiently to absorb the entire estate. Waste was also charged. The prayer was to set aside the deed to Featherston and recover the land, or else to enforce its terms, require a sale and settlement of the claims; for injunction, receiver and general relief.

The defendants demurred to the bill on the following grounds:

(1.) For want of equity.

(2.) Because the bill was multifarious.

(3.) Because complainant had an ample remedy at law

The court overruled the demurrer, and the defendants excepted.

C. N. FEATHERSTON; J. A. BLANCE; IVY F. THOMP-SON, for plaintiffs in error.

JANES & RICHARDSON; DABNEY & FOUCHE, for defendant.

JACKSON, Chief Justice.

The error assigned in this record is the judgment of the court overruling the demurrer and retaining the bill.

The purpose of the bill is to set aside a deed made by the complainant's intestate, on the ground that the grantee had no title to certain lands conveyed by the intestate, because he had wholly failed to carry out the trusts confided to him, upon the fulfilment and performance of which his title to the land conveyed was to be absolute, but not before; or in the event that equity would not have the deed set aside and canceled absolutely, then that a decree be had compelling the grantee to fulfil the trust confided to him by the decedent, or deliver up the deed and restore the land to the estate.

This is the sum and substance, the aim and scope of the bill and amendments.

The equity of the bill rests, in the main, on the construction of the deed.

These words appear in it: " Now, the further consideration of this deed is that the said Featherston is to pay off and discharge said mortgages (previously described), he contracting to be liable for the payment of the same only so far as the proceeds of the land will go towards their payment, in no case assuming any individual liability except to faithfully discharge his duty in managing or disposing of the land, so as to make it or the proceeds thereof,

if possible, pay off and discharge said mortgages, and to take the trouble and vexation of managing and disposing of the same off the hands of the said Richardson ; and whenever the said F. shall in any way pay off or satisfy said mortgages, then all of said lots and parts of lots of land shall belong absolutely to him, discharged from all claims and incumbrances whatsoever, except those hereinafter mentioned and specified." Those thereinafter mentioned and specified are that the mortgagees may foreclose, and that a homestead for the grantor may be carved out of the land, which is "to hold in abeyance and to prevent going into full effect the absolute right of G. W. Featherston."

Without invoking the aid of surrounding circumstances, which, if the instrument itself were doubtful of construction, could well be invoked by parol, and which are set out in the bill, we are of opinion that its meaning is quite apparent from inspection. Its own light is enough to enable one to read it without pouring other rays upon it.

Two considerations are expressed in it, one is the usual trifling and formal consideration of ten dollars at its beginning, and the other and the real consideration is the extinguishment of the mortgages by " managing or disposing of the land," and relieving the grantor from " the trouble and vexation " of doing so himself.

This real consideration on which the title to the grantee is to become absolute—it being in him before in the former part of the deed, to enable him to manage and dispose of it to extinguish these mortgages—the bill alleges has not been performed at all by him, but the lands have been used for his own profit and emolument. Some of the mortgages are unpaid ; others, which have been paid, are transferred to the wife of the grantee, and are outstanding in her name, with the view that the interest accumulating on them may eat up the entire lands. Thus the consideration of the deed has absolutely failed, the trust on which it is made has been betrayed, and the confidence

of the grantor abused by this trustee, in whom a *quoad hoc* sort of title was put to enable him to pay off these mortgages, and upon the performance and faithful discharge of which trusts, and not until that performance and faithful discharge, the title to him individually and absolutely was to pass. The very consideration on which it was to be absolute or perfect, or freed from the mere character of a deed with power to manage and sell, is the faithful execution of the trust. It has not been faithfully executed, but fraudulently turned to the benefit of the trustee and his wife, if the bill be true, and the demurrer admits its truth.

Ought it not then to be canceled and annulled by a court of equity? Could not this grantor have gone into equity and demanded its cancellation in his life time? If so, may not his legal representative do so now under this bill? Shall he hold the land and not pay for it what he agreed to pay, to-wit, the relief of the grantor from the trouble and vexation of managing and selling the lands so, as to extinguish the liens thereon—a payment which he has not made and can now never make, because the grantor is now free forever from all earthly vexation and annoyance?

Without considering, therefore, the surrounding circumstances, or any other charges in this bill, such as the insolvency of the grantee, his disclaimer of title while the grantor lived, his failure to record the conveyance during that life-time, his transfer of the mortgages to his wife, etc., there is equity in it springing out of the deed itself, and the utter failure to perform the trusts expressed therein, to require its retention in court and to demand a thorough and full trial thereof on the merits. The demurrer, in any view we can take of it, was properly overruled, and the judgment must be affirmed.

The entire bill, amendments and all, points to these lands, to the fraudulent use of a legal *quasi* title in them, and to relief from this fraud. In its entirety it appears to us

harmonious and not multifarious. In equity all kindred causes may be embraced and all parties summoned to her bar, by amendment, which are necessary to adjudicate the questions at issue, and to complete the justice she seeks to mete out to all.

Judgment affirmed.

Cited for plaintiff in error: Code, §§3480, 2309, 2310, 2295, 3115; 2 Wash. Real Prop., 3 (2), 10 (11), 6 (4), 11 (10), 12 (13), 18 (19), 20, 7, (5), 4 (bottom); 1 Perry on Trusts, 124, 134, 135, 137, 153; Hill on Trusts, 91, 120; 20 *Ga.*, 563; 15 *Ib.*, 103; 5 *Ib.*, 341; 13 *Ib.*, 192; 40 *Ib.*, 199, 204; 1 Doug. R., 225, 527; 4 Kent., 130, 129, 132; 2 Story, 1319, 1494, 1509; 53 Me., 213; 14 Allen, 69; 4 Watts and S., 149; 30 Ind., 228; Har. and J., 551.

For defendant: Code, §2316; 2 Story Eq., 972, n, 4, 1036, n. B.; 1 Vol. Leading Cases in Eq., 304, 307, 327.