ANDERSON, administrator, vs. BROWN.

| 72 | 713 |
|---|---|
| 103 | 532 |
| 72 | 713 |
| 106 | 328 |
| 106 | 330 |
| 72 | 713 |
| 121 | 294 |
| 72 | 713 |
| 124 | 296 |

[Hall, Justice, being disqualified, Judge Clarke, of the Pataula circuit, was designated to preside in his stead.]

1. The verdict is sustained by the evidence.

2. The title to property set aside to a bankrupt as an exemption is absolutely in him, and there is no law prohibiting him from alienating or encumbering such exempted property, though done before his final discharge.

(a.) Where articles of agreement set forth mutual covenants, they constituted a valuable consideration from each party to the other. In this case the articles contemporaneous with the note, deed and bond for titles, constitute with them one contract. They must all be construed together, and the consideration of the main transaction runs through all the branches.

(b.) The true test of testamentary character in a writing is, whether its effect appears to be deferred till the death of the maker and appointed to take place in that event.

3. While parol testimony is inadmissible to alter the terms and conditions of a written contract, it is admissible to show the circumstances under which a note was made, to explain the consideration and show that it was not, in fact, based on the consideration which appeared upon its face, but what its true consideration was.

4. In a contest between an administrator and another concerning cer-

tain lands, tax returns made by the intestate of the administrator, in which he returned the lands as the property of the other party, were admissible in evidence as admissions against his title.

5. A policy of insurance issued to the intestate, insuring the improvements on the land as his property, was properly rejected from evidence. The policy was the statement of the company, not of the insured, and it was irrelevant as a contradiction of the admissions of the intestate, because he still had an insurable interest in the property.

6. Under a bill by an administrator to recover certain land conveyed by his intestate, the existence of judgments and claims against the estate and the insolvency of the decedent being admitted, it was irrelevant to go into a full exhibition of the liabilities of the estate.

(*a.*) A grantor cannot plead against his conveyance to his grantee and the possession of the latter his own fraud, nor can an administrator plead his intestate's fraud for that purpose.

7. One ground on which it was sought to set aside certain articles of agreement being the imbecility and incapacity of a party thereto, and his administrator, who brought the action after his death, having testified at length to establish that the decedent had always been a man greatly deficient in business sense and force, and that for many years prior to his trade with defendant he had been incompetent to make trades, it was admissible to show, on cross-examination, that the witness himself had traded with the decedent in regard to interests amounting to $10,000.00, although it was five years prior to the making of the contract in controversy. In such cases the inquiry is not usually confined to precise and narrow limits of time.

8. Where a witness has been examined by interrogatories, a party may withdraw his cross-interrogatories and then object to the use of answers thereto by the other side, if they are objectionable, as coming from the offering side, provided that such withdrawal is made before the interrogatories are read to the jury; but upon an oral examination, a party asking a cross question and eliciting an unfavorable reply, which the other side could not have introduced, cannot have the legitimate answer to his own question ruled out; and the same principle applies to cross-interrogatories and answers after they have been read to the jury.

April 8, 1884.

Bankruptcy. Debtor and Creditor. Insolvency. Contracts. Evidence. Deeds. Wills. Admissions. Administrators and Executors. Estoppel. Fraud. Practice in Supreme Court. Practice in Superior Court. Be-

fore Judge SIMMONS.    Houston Superior Court.    October Term, 1883.

Reported in the decision.

A. A. DOZIER; R. N. HOLTZCLAW; H. M. HOLTZCLAW, for plaintiff in error.

B. M. DAVIS; W. S. WALLACE, for defendant.

CLARKE JUDGE.

On May 29, 1877, the following transaction occurred between the intestate of plaintiff in error and the defendant in error .

Intestate executed to said defendant his promissory note for $723.00, due December 1, thereafter. For security thereto, he made to the same a fee simple warranty deed to certain lands, and received back from him a bond to reconvey in payment of the note  Contemporaneously, they joined in a written agreement under their seals, and attested by two witnesses, wherein " the said Glenmore T. Brown agrees, covenants and contracts with said Tooke, that, if said Tooke should fail, during his life, to pay " said note, the said Brown " shall not, during the life of Susan Tooke, the wife of said Joseph, if she shall survive said Joseph, so press said claim, or note, as to deprive the said Susan of the full enjoyment, for her natural life, of the use and enjoyment of said lands." The said intestate therein covenants and agrees, for himself, his heirs, executors and administrators and assigns that, in the event said Brown carries out his covenant aforesaid, "then" the said Tooke ' surrenders up to said Brown his bond for titles to said land and all right to pay for the same, and to have title thereto made as specified in said bond ; but that said lands, after the death of said Susan, shall revert and become absolutely vested in said Brown, his heirs and assigns." In January, 1880, about the first day, Tooke

put Brown into possession of the land. On March 22, 1880, Brown executed a note of which here follows a copy, to-wit

"On the first day of October next, I promise to pay Joseph Tooke, landlord, or bearer, four thousand pounds low middling lint cotton, for the rent of his farm upon which he is now residing. March 22d, 1880. G. T. BROWN."

On the back of the note was at the same time entered:

"I this day transfer the within rent note to John G. Brown, as collateral to our promissory note for three hundred and twenty-six $\frac{25}{100}$ dollars. March 22, 1880. JOSEPH TOOKE."

The note was then delivered to John G. Brown from whom it was, at the trial, obtained by *subpœna duces tecum*. Joseph died in April, 1880, and Mrs. Tooke about four months after. In March, 1881, plaintiff in error qualified as administrator In September following, he filed his bill against Glenmore T. Brown, making the following charges, to-wit: That said deed, bond for titles and Tooke's note were made as aforesaid; that Brown rented the land for 1880 from Tooke, giving therefor his note above copied, on an agreement that the amount of such rent should be credited on Tooke's said debt to Brown; that Brown, without express contract, had held possession of the lands for 1881, and owed a like amount for rent of that year also; that he was indebted to the estate for certain personalty on the place at Tooke's death, and appropriated by Brown, making up more than enough to settle up Tooke's note. The bill prays for an accounting, and that the defendant may be required to execute to complainant, as administrator a reconveyance according to the terms of the said bond.

Defendant answered, setting up said articles of agreement, and compliance with his covenant therein. He denies that he took possession of said lands as Tooke's tenant, under a contract for rent, but charges that said Tooke induced him to take immediate possession of the land as his own, under the deed, and in consideration therefor to make

provision for the support of Tooke and wife during life; that Tooke, being old and infirm and unable to carry on the farm, did, for his own comfort and that of his wife, urge upon defendant this arrangement. He alleges that his note, purporting to have been given for rent, was really given to enable Tooke, by its transfer, to raise a sum in cash to meet certain emergencies of bad health, for medical attention, etc., and was, as soon as executed, transferred to John G. Brown, who advanced the needed money on it for such purposes. He says that he not only forebore to press his claim during the life-time of Mrs. Tooke and of Joseph Tooke, but that they lived on it under his care, and that he, by Tooke's request, and supported them from the time he took possession as long as they lived. He admits receiving some of the personalty, but alleges cash payment therefor. He denies that anything has ever been paid on Tooke's note, and that respondent owes anything to the estate for rent. He claims that since the death of Mrs. Tooke, he has held the lands as his own absolute property, under said deed, articles of agreement and compliance aforesaid, by virtue whereof he insists that the title did, at her death, become absolute in him.

By amendment, the complainant charged that said articles of agreement were void, on various grounds hereinafter particularly set forth, and also because of the mental imbecility or incapacity of his intestate. All these issues of fact were submitted to the jury, a verdict was rendered for the defendant, a motion for new trial was made and overruled, and the refusal of said motion is assigned as error.

1. The first and second grounds of the motion for a new trial are an impeachment of the finding of the jury, as "contrary to the evidence and the principles of justice and equity," and as "decidedly and strongly against the weight of evidence." There certainly was enough evidence in favor of the finding to sustain the verdict.

2, 3. Complainant objected to the said articles of agreement as evidence, on the following grounds:

(1.) Because these lands had been set aside as an exemption in bankruptcy to Joseph Tooke, who had not been discharged, and this was an attempt to alienate or encumber them, and void.

(2.) Because it was a conveyance of an insolvent at the time to respondent, reserving a benefit and possession to himself, the grantor, and is void.

(3.) Because it purports to convey a future interest in lands, and not to operate to transfer title immediately, and is not good as a deed.

(4.) Because it purports to convey a future interest in lands, and not to operate to transfer the title until after the death, not only of the grantor, but of his wife also, and is therefore testamentary, and not properly witnessed, and is void.

(5.) Because, being a testamentary paper, not properly witnessed or probated, it cannot be admitted in evidence.

(6.) Because there is no warranty in the agreement, no conditions on either party which are compulsory, is a *nudum pactum*, works no forfeiture, andis void.

Over all this array of objections, the court admitted the articles in evidence, and that ruling is the 3d ground assumed in the motion for new trial.

It appears in the record, as a solemn admission by defendant, that Tooke had been adjudicated a bankrupt; that these lands had been assigned to him as exempt; and that he had not been discharged, but that the proceedings in bankruptcy were still pending at the execution of the contract in question. But there is no law prohibiting a bankrupt from alienating or encumbering his exempted property. The title to it is absolutely in himself.

While the insolvency of Tooke sufficiently appears, we know of no law which prevents an insolvent from conveying away, in good faith, his land exempted in bankruptcy, as a security for a debt, openly reserving, by bond for

titles, a right to redeem on payment of the debt.   We know no law which prohibts him from selling, in good faith, the remainder, after a life estate to himself and wife, so as to bind himself.

The former is what he did by his deed of conveyance, and by taking Brown's bond for titles.  Perhaps the latter is one mode of stating the effect of the articles of agreement. The administrator could not set up this objection to the acts of his intestate.   These articles, contemporaneous with the note and deed of Tooke and Brown's bond for titles, constitute, with them, one contract, and they must all be construed together.   The consideration of the main transaction runs through all the branches.   The articles of agreement set forth mutual covenants, which constitute a valuable consideration from each to the other.

It is said that the agreement purports "to convey a future interest in lands, and not to operate to transfer title immediately," and that it is therefore void. On the question of the admissibility of the paper in evidence, it matters not whether it be called a deed of conveyance, or a contract providing terms, under which a title, otherwise conveyed, could be relieved from conditions of defeasance. It was a part of the written contract of the parties about this land, out of which and according to which they hold their respective rights.   We can see no force in the objection number 3, unless we take it to be an incomplete statement of the idea contained in the 4th and 5th objections, which set up that the contract expressed in the articles was not to take effect till the death of Tooke, and that the agreement was therefore testamentary in its character, and, for want of due attestation as a will, altogether void.

The true test of testamentary character in a writing is, whether its effect appears to be deferred till the death of the maker, and appointed to take place upon that event.

The true construction of the entire contract witnessed by these papers is this: the deed conveyed the fee simple

title, *eo instanti*, but Brown then and there assumed an obligation to re-convey upon a condition expressed. By the articles of agreement, an additional immediate effect took place, viz. : that Brown's obligation to re-convey was then and there so modified that he might relieve himself from it by patiently and forbearingly allowing Mrs. Tooke to enjoy the use of the land during her life, long or short; to which forbearance he then and there bound himself by a solemn, sealed covenant. These rights and liabilities were all fixed at once by the execution of the contract in all its several parts. It is true, that one of its condi- tions might have to be performed after Tooke's death. But it might not. Brown's covenant was to forbear during Mrs. Tooke's life. Had she died before her husband, and had Brown forborne till her death, he would have been free to proceed against Mr. Tooke, without losing the bene- fit of Tooke's covenant expressed in these articles. The articles, therefore, are *not testamentary* in their nature. They were properly admitted in evidence.

4. John G. Brown testified as follows in regard to the aforesaid note of Brown to Tooke : " I wrote it. The note was written by me in March, I think. Mr. Tooke had heard of a cancer doctor in Macon, and wanted to raise money to go there. He went to work on Sonny (*i. e.*, Glenmore Brown) to raise it. The boy came to me, and I told him I would not raise it, unless he would fix me up some way to secure me in the payment. I says, I don't care, so you give me good collateral. He went off and came back again. Tooke did not know what to do. I says, get him to give you a rent note. I think it was about $400 he wanted, and he made that note for $500 to secure the amount. Glenmore Brown made the rent note. I think it was some seven or eight bales of cotton; and his grandfather, Joseph Tooke, signed the transfer, and I got the money and let Tooke have it. I took the note from Glenmore Brown, and it has been in my possession ever since."

To this testimony complainant objected, on the ground, that it was parol testimony to contradict the written note. The admitting of it by the court constitutes the 4th ground of the motion for new trial. We see in it nothing to contradict or vary the terms or conditions expressed in the note, or to add any new terms or conditions. It is no effort to get rid of any promise made, either as to the extent or time of fulfillment. It is but a detailed statement of the circumstances under which the note was made. If it explains the consideration and tends to show that it was not, in fact, a note based on rent, we understand that it is allowable to show by parol the true consideration of a note, so long as there is no effort to graft on to the writing any new condition or stipulation, or to strike therefrom any stipulation or condition therein expressed.

5. Certain tax returns made by Tooke, as agent for defendant, Brown, in 1877 and 1878 and 1879, wherein he returned these lands as Brown's property, were allowed to go to the jury as admissions of said Tooke. This is the 5th ground for new trial. The admissibility of such admissions of intestate against his own title, when offered in answer to the claims of the administrator, is too plain to need more than a statement.

6. In rebuttal, complainant offered a policy of insurance, made to Tooke December 10, 1879, upon improvements on these lands. On objection, the court excluded it, and this furnishes the 6th ground in the motion for new trial. The policy was not offered with the application of Tooke or any statement of his. It is the statement of the company. The policy is not set forth in the record, so that this court can judge with certainty of its nature and bearings. We could not, without more accurate knowledge of it, hold that the court below, where it was fully known, erred in excluding it. It is also irrelevant as a contradiction to the admissions by Tooke against his interest, because he had an insurable interest, notwithstanding the contract set up by Brown. Brown's title had not then

v 72-47

become final and absolute. The acceptance of a policy of insurance on the improvements could not·avail as an assertion of title adverse to that set up for that time by defendant.

7. The 7th ground of the motion for a new trial is founded upon these facts: Complainant offered to prove that there were, at the time of the trial, debts against the estate, and ·the particular description of ·them. It appears that he was allowed to testify, and did testify, to the existence of judgments against Joseph Tooke, antedating the trade between him and Brown, and that there was an account for burial expenses and a doctor's bill. It was admitted that ·some of the old judgment were levied on these lands, and ·that proceedings were pending for their enforcement. The insolvency of Tooke was a proved and undisputed fact. But it seems that complainant was not allowed to prove fully and particularly the indebtedness of the estate. For ·whatever the fact of such indebtedness and of such insol- vency could be worth, complainant, as administrator, had ·the full benefit of such facts. Surely, it could not be rele- vant to this case to go into a full exhibition of the condi- tion and liabilities of the estate. It is contended that, upon showing debts which ought to be paid, the adminis- trator would be allowed, in behalf of creditors, to attack his intestate's deed and agreement aforesaid, on the ground that they constituted a fraud against creditors. Well, if he could be allowed to plead his intestate's fraud, he had ·in enough proof of the existence of creditors to lay the foundation for a claim of such right. But it is a funda- mental principle that Tooke, if alive, could not be allowed to plead against his conveyance to Brown, and Brown's possession thereunder, his own fraud; and it is equally well settled that the administrator cannot plead his in- ·testate's fraud for such a purpose.

8. The eighth ground for new trial is, " Because the ·court, over objection of complainant, allowed respondent to prove that complainant, as an individual, made a con-

tract with Tooke five years before Brown's trade, and what interest complainant had in the factory; also all evidence of what property complainant, or his wife, got from Tooke, as complainant insisted not to disclose his and his wife's private affairs."

Complainant had testified at length to establish that Tooke had always been a man greatly deficient in business sense and force, and that for many years prior to his trade with Brown, he had been incompetent to make trades. In cross-examination, he was asked, "Didn't you trade your property to Mr. Tooke for $10,000 interest in the factory?" He replied, "I made a trade with him, but it was five years before Glenmore's trade with him." The court allowed this evidence. We think it was relevant, as tending to show the complainant's estimate of Tooke's mental capacity at that time. On questions like this, the inquiry is not usually confined to precise or narrow limits of time. Mrs. Anderson had testified, in behalf of complainant, to much going to show the feebleness of Tooke's mind for years before the trade with defendant, Brown. If any other evidence of the kind objected to in this ground of the motion was admitted, the same is not so specifically set out in the motion for new trial, or in the record, as to enable this court to see the force of the objection.

9. The 9th ground for the new trial asked is the failure of the court to charge the law contrary to the propositions which we have hereinbefore decided in regard to the said articles of agreement. Of course, we see no error in that.

Jeter was examined upon interrogatories by defendant. Complainant, in his 7th cross-interrogatory, and in his 8th, directly asked Jeter what he had heard defendant say about the contract of rent between him and Tooke. Jeter made direct answers, setting forth defendant's statements favorable to himself. The 10th and 11th grounds of the motion for a new trial are, that the court did not, on the application of complainant, exclude from the jury these statements of defendant, so elicited. It is well settled that a

party may withdraw his cross-interrogatory, and then object to the use by the other side of answers thereto, if they are objectionable as coming from the offering side. But it is also settled that, upon an oral examination, a party asking a cross-question and eliciting an unfavorable reply, which the other side could not have gotten in, cannot have ruled out the legitimate answer to his own question. How can this rule be reconciled in principle with the allowance of the withdrawal of a cross-interrogatory, and of objection to the answer? Obviously thus: Before the interrogatories are read to the jury, the withdrawal of a question is, so far as the minds of the jury are to be affected, the same as if the question had never been asked. But on oral examination, the jury hear the cross question and the answer, and it is trifling with the means of investigation before the court to draw out and place before the jury matter which may, despite all judicial precautions, affect the finding, and then call on the court to protect the rash inquirer from his own indiscretion. This principle applies with full force to cross-interrogatories and answers, which have been read to the jury without objection. It is too late for the author of the questions to move to rule out such answers. In the argument, counsel for plaintiff in error contended that they asked to withdraw these cross-interrogatories before they were read. If they did, they have failed to make that fact distinctly to appear. The presumption being in favor of the ruling below, it seems proper, under the mode of stating this objection in the record, to believe that the motion to exclude this testimony was never made till the depositions had been read to the jury.

On the whole, we see no ground to reverse the court below. Let the judgment be affirmed.

Judgment affirmed.