Hagerty vs. White and husband.

*De W. C. Priest,* for the appellants.

*Conrad Krez,* for the respondent.

The arguments were confined to the sufficiency of the evidence to sustain the findings, and the regularity of the order.

HAGERTY, Appellant, vs. WHITE and husband, Respondents.

*September 6 — September 20, 1887.*

*Appeal: Construction of contemporaneous contracts: Equity: Partnership: Practice.*

1. Two written instruments between the same parties, made at the same time, in relation to the same subject matter and for the same common purpose, are to be construed together as one single and entire agreement.

2. Whether an instrument by which an aged father, desiring to live with his daughter and have her husband manage his livery business, transferred to her a life insurance certificate, and an undivided one-half interest in his livery stock, the daughter agreeing to pay $1,000, to be applied on a mortgage given by her father, and to manage the business and apply all the earnings, after pay-

ing expenses, upon such mortgage, and after that is paid to divide them with her father, and the daughter's husband to have the management of the father's interest in the livery business; and a deed executed at the same time, by which he conveyed to his daughter a one-half interest in lands, including that on which the stable stood, on condition that she should suitably provide for him, the deed to be void on her failure to do so, and he reserving the profits of a portion thereof during his life, when construed together, do or do not create a partnership between him and his daughter, they give the daughter and her husband the exclusive right to the sole control and management of the livery business, so long as there is no forfeiture or substantial intervening equity, and the father cannot maintain an action in equity to dissolve the alleged partnership or rescind the agreement while the defendants are acting in good faith and substantially performing their contract, but, at most, is entitled only to an accounting.

3. It is within the discretion of the trial court to allow or not allow a plaintiff, after the defendant has rested, to re-open his case for testimony which he should have produced at first; and its exercise of that discretion, in the absence of any abuse, will not be reviewed on appeal.

APPEAL from the Circuit Court for *Brown* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for the dissolution of an alleged copartnership, and an accounting and receiver. The defendants answered jointly, taking issue with portions of the complaint, and setting out in full the writings between the parties. After the trial, and on March 10, 1887, the court in effect found, as matters of fact — (1) That November 18, 1885, the plaintiff and the defendant *Maggie White* made and executed the written instrument set out *verbatim* in the answer, to the effect that the plaintiff, of Green Bay, of the first part, for and in consideration of $1,000 to him in hand paid by said *Maggie*, of Marinette, of the second part, the receipt whereof was thereby acknowledged, had bargained, granted, sold, and conveyed, unto the said *Maggie*, her heirs, executors, administrators, and assigns, the undivided one-

half of the goods, chattels, and personal property therein described, all contained and being in the plaintiff's livery-stable on lot No. 23, described, in Green Bay, and all other utensils and outfits belonging to said livery-stable, to have and to hold the same unto the said *Maggie*, her heirs, executors, administrators, and assigns forever; that the plaintiff thereby agreed to warrant and defend the title to the goods, chattels, and personal property so transferred; that it was thereby agreed between the parties that the plaintiff should, during his life-time, have the right to collect for his own use and purposes all rents to be derived from the north 22 feet of lot No. 24, and from lot No. 14, in block No. 8, and the north-half of lot No. 13, in block No. 8, described, all in Green Bay, in consideration of the plaintiff's agreeing to keep said described property in repair, and insured against fire, at his own expense; that the plaintiff, for himself and his assigns, therein further agreed with said *Maggie* and her assigns that said *Henry J.*, her husband, should "have sole control and management of the undivided one-half of the first part in the livery-stable business, from that day out;" that the plaintiff therein covenanted and agreed that he would forthwith apply the above-named consideration, $1,000, as payment on the mortgage given by him to Ellen Carrabin, May 21, 1884; said *Maggie* therein covenanted and agreed to "carry on the livery business to the best advantage and to the best of her ability, and out of the earnings thereof pay all expenses first, and apply all gain towards the payment of said mortgage;" that both of said parties therein agreed that, when said mortgage should be thus paid up, all gain from said livery business above expenses should be divided equally between them; that the plaintiff therein further covenanted and agreed that he would, upon the signature and delivery of said agreement, assign one-half of his life-insurance certificate in the Iron-Gate Council of the Royal Arcanum Lodge of Green Bay

to the said *Maggie;* (2) that at the same time, to wit, November 18, 1885, the plaintiff made, executed, and delivered to said *Maggie* a deed of conveyance, a copy of which was made a part of the answer, and marked "Exhibit A," whereby the plaintiff, "for and in consideration of the sum of one dollar, and other valuable considerations" therein named, bargained, granted, sold, aliened, conveyed, and confirmed unto the said *Maggie*, her heirs, and assigns forever, the undivided one-half of the lands above described, and other lands described, in Green Bay, upon the express condition that the said *Maggie*, her heirs, executors, administrators, and assigns, should "for and during the term of the [plaintiff's] grantor's natural life provide and furnish him a good and comfortable home, food, and such other necessaries" as he had been accustomed to, and such as were suited to his age, station in life, and comfort; and, further, that in case of the failure to perform the said conditions, as aforesaiJ, said deed should be null and void, and the premises thereby conveyed revert back to the grantor; that on the death of the grantor the deed should become absolute.

Said deed contained a covenant of seizin, and for quiet and peaceable possession, and against all incumbrances, except against said mortgage of $4,500; (3) that said written agreement and deed, so made and executed by the same parties, and at the same time, each formed a part of one single and entire agreement, and each was in part the consideration for the other; (4) and they together constitute the only agreement between the parties thereto, relative to or touching the subject-matter thereof; (5) that in pursuance of said agreement the said *Maggie* immediately paid to the plaintiff said $1,000, and he thereupon paid the same on said mortgage; (6) that immediately upon the execution of said instruments, and under and by virtue of the same, said *Maggie* entered into the actual possession and enjoyment of her in-

terests in the personal property and livery business mentioned, and thereby conveyed, including said lot No. 23, which was treated and considered as a part of the assets of said business, and has continued in such possession and enjoyment at all times since; (7) that at the same time said *Henry J.* entered upon the sole control and management of the undivided interest of the plaintiff in said livery-stable business, and the defendants have at all times since carried on the same; (8) that when the defendants took the charge and management of said livery-stable business, it was much run down, and the livery stock, except the horses, much worn, out of repair, and some of it worthless; that under the management of the defendants the business had improved; that the horses were as good, wear, use and age excepted, as when they took possession, and the balance of the property much improved, and some of it renewed; (9) that out of the earnings of said business the defendants had paid the expenses thereof; that after doing so no surplus remained to apply on said mortgage, which was not yet due; (10) that it was understood and agreed between the parties to said agreement that the necessary family living expenses of the defendants should be included in, and be paid as a part of, the expenses of said livery business, and that, by the stipulation of the parties upon the trial of this cause, the sum of $65 per month is a reasonable amount for such family expenses per month; (11) that the defendants had kept an account of the receipts from all sources, and also the expenses of said business, and had at all times, except on one occasion, when the plaintiff was under the influence of liquor, permitted said plaintiff to have free access thereto; (12) that the defendants had fully performed said agreement relative to carrying on said livery-stable business, and that none of the allegations of said complaint charging the defendants, or either of them, with misconduct in connection with the same, were true.

As conclusions of law, and for the reasons stated in his opinion filed, the court found that the defendants were entitled to judgment dismissing the plaintiff's complaint herein, without costs. From the judgment dismissing the plaintiff's complaint, but without costs, entered upon said findings, the plaintiff brings this appeal.

For the appellant there was a brief by *Hudd & Wigman,* and oral argument by *Mr. Wigman.* They contended that, under the contract between the parties, there is a community of profit and loss, which renders them partners, and that the partnership was dissoluble by either partner, even without cause, though he might thereby render himself liable in damages for a breach of his covenants. *Skinner v. Dayton,* 19 John. 538; *Crawshay v. Maule,* 1 Swanst. 495; *Featherstonhaugh v. Fenwick,* 17 Ves. 298, 307; *Alcock v. Taylor,* Tamlyn, 506; *Jeffreys v. Smith,* 1 Jac. & W. 301; Parsons on Partnership, p. 382; Story on Partnership, sec. 269; *Skinner v. Tinker,* 34 Barb. 333; *Pine v. Ormsbee,* 2 Abb. Pr. N. S. 375; *Griswold v. Waddington,* 15 Johns. 57; *Peacock v. Peacock,* 16 Ves. 49. In this case, sufficient cause for dissolution was shown in the defendants' negligence as to keeping accounts of the business, their refusal to render an account, and generally their misconduct and incapacity. *Bevans v. Sullivan,* 4 Gill, 383, 391; *Wood v. Beath,* 23 Wis. 254; 1 Collyer on Partnership, secs. 119, 181, 296, 360; Story on Partnership, secs. 6, 181, 182, 285–290; *Fogg v. Johnston,* 27 Ala. 432.

For the respondents there was a brief by *Vroman & Sale,* and oral argument by *Mr. Vroman.* They argued that the agreement and deed were to be construed together as a single instrument, and the entire contract was one of support, and not of partnership. No partnership was intended by the parties. *Stacey v. Randall,* 17 Ill. 467; *Norton v. Kearney,* 10 Wis. 443; *Chase v. Bradley,* 26 Me. 531; *Merrill v. Gore,* 29 id. 346; *Stout v. Whitney,* 12 Ill. 218; *Rob-*

*inson v. Stow*, 39 id. 568; *Herbst v. Lowe*, 65 Wis. 316; *Pollard v. Maddox*, 28 Ala. 321; 2 Parsons, Contr. 499, 501.

CASSODAY, J.   The findings of fact seem to be well supported by the evidence.   At the close of the testimony on the part of the defendants, the plaintiff attempted to show the condition of the livery stock when the defendants took possession, and its condition at the time of the trial, but the court refused to allow him to do so, and error is assigned for such ruling.   The proposed testimony, if admissible, should have been given as a part of the plaintiff's original case. Some such testimony was in fact given by the plaintiff before resting his case.   To have allowed him to give in evidence the proposed testimony, would have been to allow the plaintiff to re-open his original case.   This could not be done as a matter of strict legal right, after the defendants had rested.   Trial courts, however, have a large discretion as to the order in which testimony should be admitted, especially in equity cases like this.   Such exercise of discretion, in good faith, and in the absence of any abuse of it, is not the subject of review.   It follows that this appeal must be determined upon the facts as found.

Manifestly, the trial court was right in holding that the two written instruments between the same parties, made at the same time, in pursuance of the same agreement, for the same common purpose, and in relation to the same subject-matter, must, upon well-settled principles, be construed together as constituting one paper in law.   *Winner v. Hoyt*, 66 Wis. 234; *Herbst v. Lowe*, 65 Wis. 320.

The plaintiff is the father of the defendant *Maggie*.   At the time of making the writings he lived alone in Green Bay, and she and her husband at Marinette.   The plaintiff then had a livery-stable and certain other pieces of land in Green Bay, a part of which was subject to a mortgage of $4,500.   He also had a livery stock, and was carrying on

the livery business at that place. He was old, and wanted to live with *Maggie*, and have her husband take sole control and management of the livery business. *Maggie* and her husband only had about $1,000. The transaction was such that the plaintiff, by the papers mentioned, transferred and assigned to *Maggie*, absolutely, the undivided one-half of the livery stock, and an insurance certificate, and also conveyed to her by warranty deed with covenants of seizin, quiet enjoyment, and against all incumbrances, except said mortgage, the undivided one-half of said lands, including said livery-stable, upon the express condition that *Maggie*, her heirs, executors, administrators, and assigns, should, for and during the plaintiff's natural life, provide and furnish him a good and comfortable home, food, and such other necessaries as he had been accustomed to, and as were suited to his age, station in life, and comfort; and in case of the failure to perform said conditions, the deed was to be null and void, and the premises thereby conveyed to revert back to the plaintiff; and on his death the deed was to become absolute. By the agreement the plaintiff was to have the right, during his life-time, to collect for his own use and purposes all rents to be derived from three of the pieces of land, the undivided one-half of which was so conveyed, but which three pieces the plaintiff thereby agreed to keep in repair and insured against fire, at his own expense. At the time of making the agreement, and as therein agreed, *Maggie* paid the plaintiff the $1,000, which he therein agreed to apply, and did apply, as a payment upon said mortgage. By the agreement *Maggie* was to carry on said livery business to the best advantage, and to the best of her ability, and out of the earnings thereof pay all expenses first, and then apply all gains towards the payment of said mortgage. By the writings the plaintiff, for himself and his assigns, agreed with Maggie and her assigns that her husband, *Henry J. White*, should have sole control and man-

agement of the undivided one-half of *the first part* (the plaintiff) in the livery-stable business, from that day forward. It was further agreed therein between both parties that when said mortgage should be thus paid up, as indicated, then all gain thereafter from said livery business *above expenses* should be divided equally between both parties thereto.

It is very plain that such transfer, assignment, and conveyance, so made to, *Maggie*, were in consideration of the money so paid by her, and agreements to be performed by her — including the implied agreement to provide and furnish the plaintiff during his natural life with good and comfortable home, food, and other necessaries. We say implied agreement, because it stands as an "express condition" in the deed. The payment of the $1,000 left the defendants substantially without means to perform the agreements on their part, except as they were enabled to do so from the livery business and the income of the property received from the plaintiff. The continuance during the life of the plaintiff of such business and income was the only security the defendants had against the forfeiture for condition broken, provided for in the deed. If they fail to pay the mortgage when due, they are liable to lose a part of the land by foreclosure. If they fail to perform the condition in the deed, they are liable to lose all the land by forfeiture. The condition will continue during the life of the plaintiff, unless sooner terminated by forfeiture. By implication the livery business was to be carried on by the defendants, at least until the mortgage should be paid up from gains arising therefrom, over and above all expenses. It was only after such payment of the mortgage that such net gains were to be divided equally between the plaintiff and *Maggie*. Whether there will ever be any such gains, time only will demonstrate. The right to such division of

such net gains is said to constitute a partnership which the plaintiff had the right to dissolve at any time.

But whether the agreement constitutes a partnership or not, it is manifest to us that the defendants, under the agreement, have the exclusive right to the sole control and management of the livery business, so long as there is no forfeiture, nor any substantial intervening equity. This action does not directly seek to enforce a forfeiture by reason of any breach of condition named in the deed. Besides, it is well settled that equity will not entertain an action to declare a forfeiture for condition broken. *Mills v. Evansville Seminary*, 47 Wis. 354. In such case a technical breach of contract affords no ground for equitable relief, because equity deals only with substantial rights, and only interferes when such rights are endangered. Here, according to the facts found, the defendants acted in good faith, and substantially performed their contract. This being so, the plaintiff, at most, was only entitled to an accounting, and that he got. To allow the plaintiff to go further, and in effect rescind the agreement, and thus force the defendants into a position where a forfeiture would be inevitable, would, as it seems to us, be inequitable, if not an abuse of the powers of the court.

*By the Court.*— The judgment of the circuit court is affirmed.