## McCREARY *v.* GEWINNER, administrator.

Though a married woman, who had a perfect legal title to land, conveyed the same to her husband by a deed which in effect recited that she had acquired such title through him for a special purpose, that the same had been accomplished, and that the deed was made for this reason, yet where it also appeared that such deed was executed under an order of the judge of the superior court, based upon a petition by the husband, alleging that at the time. he bought the land above mentioned he paid for the same with his own money and had the title made to his wife "for a special purpose then well understood between them, which purpose has been fully accomplished, and the motive for so making said title removed," that he had improved the property, that he and his wife had only one child, a daughter, and "that her parents desire to make a settlement of all their property, by the will of the father now about to be drawn, so as to protect said property for the benefit of their said daughter upon their death, they now getting old and desiring such settlement"; the petition also praying that the wife be allowed to execute "a quitclaim deed to your petitioner to enable him to make such testamentary settlement"— *Held :*

1. That, for the purpose of ascertaining the true intent and meaning of the deed from the wife to the husband, these two instruments should be construed together as constituting parts of one and the same transaction.
2. That, thus construed, this deed conveyed the land to the husband in trust to devise it to the daughter.
3. That, upon the death of the mother, an equitable petition at the instance of the daughter against the father was maintainable to prevent an alienation or encumbrance of the property by him; and that after his death without having made such devise, the petition could be prosecuted against his legal representative, for the purpose of compelling an equitable enforcement of the contract between the father and the mother, for the benefit of the daughter as the beneficiary of the trust thus created.

Argued February 2, — Decided March 5, 1898.

Equitable petition. Before Judge Felton. Bibb superior court. April term, 1897.

*Chambers & Polhill,* for plaintiff. *Anderson, Anderson & Grace* and *Hardeman, Davis & Turner,* for defendant.

LITTLE, J. It appears that on August 25, 1871, Stephen Collins executed a deed of conveyance in fee simple to certain property to Mrs. Bridgett Sullivan, wife of Cornelius Sullivan. On July 20, 1886, Cornelius Sullivan presented a petition to the judge of the superior court, alleging that at the time the deed was made by Collins to his wife, he bought and paid with his

own money for the property thus conveyed; that he had the title temporarily made to his wife for a special purpose then well understood between them; that this purpose had been fully accomplished, and the motive for so making the title removed; that with his own means he had added largely to the value of the property by putting up a storehouse and dwelling thereon; that he and his wife had only one child, a daughter, and desired to make a settlement of all their property by the will of the father then about to be drawn, so as to protect said property for the benefit of their said daughter after their death, "they now getting old and desiring such settlement." Upon this state of facts, Cornelius Sullivan prayed that "said Bridgett Sullivan may execute a quitclaim deed to your petitioner to enable him to make such testamentary settlement." On the same day, to wit July 20, 1886, Bridgett Sullivan executed to Cornelius Sullivan, in consideration of the sum of five dollars, a quitclaim deed to the property referred to in the petition presented by Cornelius Sullivan to the judge of the superior court, which quitclaim deed was in the ordinary form, and concluded with this habendum clause: "To have and to hold the said lot of land to the said Cornelius Sullivan, so that neither the said Bridgett Sullivan, nor her heirs, nor any other person or persons claiming under her, shall at any time by any ways or means have, claim, or demand any right or title to the aforesaid lot of land, or its appurtenances or any right thereof." On July 21, 1886, the following order was entered by the judge of the superior court on the petition presented by Cornelius Sullivan: "On considering the foregoing petition and the evidence submitted to me in that behalf, it is ordered that the prayer of petitioner be granted. Let this order and petition be entered upon the minutes of the court at petitioner's cost."

In August, 1895, Cornelius Sullivan sought to encumber or sell the property, and Mrs. Annie E. McCreary, the only child of Cornelius Sullivan and his wife Bridgett, the latter having died in August, 1887, presented a petition in which she set out the facts outlined above, contending that her mother executed the quitclaim deed in consideration and for the express purpose and with the sole intention of placing the title in Cornelius

Sullivan, that he might hold, occupy, and control the property during his life, and that before his death he would settle the same in fee simple upon her (the daughter) by testamentary devise; that by his acceptance of the quitclaim deed under the statements made in his petition, he took possession of the property in trust for plaintiff, who became vested with a fee simple title in remainder after his death, and he became entitled only to a life-estate; that the granting of the order by the judge and the execution of the quitclaim deed were simultaneous acts and constituted one and the same transaction; that Cornelius Sullivan now refuses to carry out his agreement to settle the property on plaintiff as he is legally and equitably bound to do, but, as she is informed, has sought to create a mortgage thereon, and is now seeking to sell it, as appears by his advertisement, and thus to deprive her of the property at his death; that should he do either of these things, her right and title at his death would be greatly clouded, and she would be subjected to interminable litigation and expense in recovering the same; and that his failure to carry out the terms recited in his petition, for the transfer of the title to him under which the order was granted, is a legal fraud on her rights. Wherefore she prayed that Cornelius Sullivan be enjoined from alienating or encumbering the property so advertised for sale, and from executing any will devising the same to any charitable institution or any person other than plaintiff; and that plaintiff be decreed to be the owner of the property in remainder after the death of Cornelius Sullivan. To this petition Sullivan demurred on the following grounds: (1) No legal cause of action. (2) It does not appear that plaintiff was a party to the undertaking or agreement of defendant with his wife, or paid any consideration therefor, or that there was any mutuality or privity of contract between plaintiff and defendant and his wife in said agreement. (3) The statute of limitations. (4) Failure to set out clearly, strongly and satisfactorily, so as to leave no reasonable doubt, the terms of the agreement sought to be enforced. (5) The statute of frauds.

Cornelius Sullivan having died pending the action, the plaintiff filed an amendment, reciting the fact of the death of

the defendant, and alleging, that for sufficient legal cause the will of Cornelius Sullivan had been declared null and void by the court of ordinary ; that in said will he made no provision for carrying out said agreement with plaintiff's mother; that immediately upon his death the property was taken possession of by his administrator, who had received the rents and profits thereof for a given time. She prayed that the administrator be directed to deliver possession of the property to the plaintiff, that the title thereto be declared to vest in her, and that she have judgment against the administrator for mesne profits. The administrator demurred upon each and all of the grounds of the original demurrer filed by Cornelius Sullivan, and further: (1) Because the petition shows that plaintiff claims as purchaser and not as heir at law. (2) Because the petition as amended fails to allege that there are no debts due by said estate, and also fails to allege that there are no other heirs at law. (3) Because the petition as amended fails to allege that the property involved in said suit is not necessary to be administered by the administrator for the payment of debts and distribution among heirs at law. (4) Because said petitioner in said petition seeks to claim under the petition attached as an exhibit and under the quitclaim deed also attached as an exhibit, being the very foundation of her cause of action, if any she has, and at the same time seeks to deny the material recitals thereof. These demurrers were sustained and the petition dismissed ; to which judgment on the part of the court the plaintiff excepted. In ascertaining the rights of the plaintiff, if any she has, to the property in question, it is important to inquire: (1) Whether the quitclaim deed made by the wife to Cornelius Sullivan may be construed in conjunction with the petition filed by him for the purpose of procuring its legal execution, and whether that petition may be regarded as constituting an integral part of the transaction which resulted in the execution of the deed. (2) If the deed and petition are to be construed together, what right, if any, did the plaintiff acquire thereunder? (3) Whether the action as brought by the plaintiff was maintainable.

1. The quitclaim deed was executed by the wife on the same

day that Cornelius Sullivan filed his petition praying that the wife be allowed to execute the same, although the order granting the prayer of the petition was not made until the following day. By section 2490 of the Civil Code it is provided that "No contract of sale of a wife as to her separate estate with her husband or her trustee shall be valid, unless the same is allowed by order of the superior court of the county of her domicile." No question is made, however, as to the regularity or validity of this quitclaim deed; both parties are claiming under it, and for the purposes of this case it may be treated as valid and binding. In the deed no reference is made to the pending petition. For aught that appears upon its face, it is a contract complete within itself. The inquiry then is, upon what ground shall the petition filed by the grantee be read in conjunction with such deed as manifesting the true intent and purpose of the contract between the parties? With respect to the interpretation of contracts, it is provided in the Civil Code, § 5202, that "all contemporaneous writings are admissible to explain each other." In the case of the *Marietta Savings Bank* v. *Janes*, 66 *Ga.* 286, where it appeared that Janes, as administrator, had executed to the plaintiff a promissory note, it was held that a letter previously written by the plaintiff to the defendant, requesting him to forward the note, and assuring him that it should never in any manner prejudice the defendant individually, was admissible in evidence as part of the contract. In the case of *Anderson* v. *Brown*, 72 *Ga.* 713, where the defendant executed a promissory note to the plaintiff, and, as security for the same, made a fee simple warranty-deed to certain lands, taking back from the plaintiff a bond to reconvey on payment of the note, and contemporaneously they joined in a written agreement, in substance, that if the note was not paid during the lifetime of the defendant, the plaintiff would not during the life of the defendant's wife, if she survived him, so press said note as to deprive the wife of the full enjoyment for her natural life of the lands conveyed by the deed, it was held that these articles of agreement, being contemporaneous with the note, deed, and bond for titles, constituted with them one contract; that they must all be construed together, and the con-

sideration of the main transaction runs through all the branches. The same principle is recognized in the case of *James* v. *Hutcherson*, 81 *Ga.* 451, and is universally applied in the construction or interpretation of contracts.

In 2 Parsons on Contracts (8th ed.), bot. p. 669, the rule is laid down to be: "If there are contemporaneous writings between the same parties, so far in relation to the same subject-matter that they may be deemed part and parcel of the contract, although not referred to in it, they may be read in connection with it." "Several instruments made at the same time are to be construed together as parts of one contract, where it is necessary to carry into effect the agreement and intention of the parties." 1 Story on Contracts (5th ed.), § 806; Hill v. Huntress, 43 N. H. 480; Shaw v. Leavitt, 3 Sandf. Ch. (N. Y.) 163; Hunt v. Livermore, 5 Pick. (Mass.) 395. In the case of Grady v. Brown, 113 Ill. 475, it was ruled that where two written instruments were executed as the evidence of one transaction, they will be read and construed together as one instrument, in arriving at the intention of the parties. It was held in the case of Allen v. Nofsinger, 13 Ind. 494, that a promissory note and the contract in writing out of which it arises, if both are executed at the same time, constitute but one agreement; and in the case of Knowles v. Toone, 96 N. Y. 534, that where two instruments are intended to embody a contract between the parties, they must be read and construed together. In the case of Porter v. Sullivan, 7 Gray, 441, it was ruled that two deeds made at the same date, between the same parties, and relating to the same subject, are to be construed together as one contract; citing Clap v. Draper, 4 Mass. 266; King v. King, 7 Mass. 496. To same effect, see Jackson v. McKenny, 20 Am. Dec. 690; Hagerty v. White, 34 N. W. Rep. 92. In the case of Thompson v. Beal, 48 Fed. Rep. 614, where a person depositing money in a bank accepted from the cashier a certificate of deposit, which made no mention of interest, but with a verbal agreement that interest should be paid, and the cashier at the same time indorsed a memorandum of the rate of interest on the stub from which the certificate was taken, it was held that the stub should be read with the certificate as evidence of the entire contract.

In the present case the petition filed by Cornelius Sullivan undoubtedly grew out of and was a part of the negotiations which resulted in the execution of the quitclaim deed on the part of the wife. Indeed, in order that the wife might make a sale of the property to him, it was necessary, under the provisions of section 2490 of the Civil Code, that he should procure the order prayed for in this petition. It was a primary step essential to be taken before the final and concluding step in the transaction could be made. It was within itself evidence of the nature of the transaction and the purpose intended to be accomplished thereby. It foreshadowed the intention of the parties, was an instrument forming a part of one and the same transaction, and should be read with and construed in conjunction with the deed, for the purpose of ascertaining the true intent and purpose of the latter. See generally, on this subject, Clark on Contracts, 590 and authorities cited in note. It is, in connection with what has just been said, important to keep in mind that the petition distinctly avers that the granting of the judge's order and the execution of the quitclaim deed constituted one and the same transaction; and for the purposes of the demurrer this averment must be taken as true.

2. Having seen that the petition and deed are to be construed together as forming one entire contract, we are now to inquire what rights, if any, accrued to the plaintiff thereunder. It is our opinion that the deed from Bridgett to Cornelius Sullivan, when construed in the light of the petition filed by Cornelius for authority to make such conveyance and the order made by the chancellor on such petition, is in law a conveyance to Cornelius on the express trust that he would devise the land to the plaintiff in error. No formal words are necessary to create a trust estate. Whenever a manifest intention is exhibited that another person shall have the benefit of the property, the grantee shall be declared a trustee. Civil Code, § 3148. A trust is an equitable obligation, either express or implied, resting upon a person by reason of a confidence reposed in him, to apply or deal with property for the benefit of some other person, or for the benefit of himself and another

or others, according to such confidence.    27 Am. & Eng. Enc.
L. 3.    And where a person has used language from which it
can be gathered that he intended to create a trust, and such
intention is not negatived by the surrounding circumstances,
and the settlor has done such things as are necessary in equity
to bind himself not to recede from that intention, and the
trust property is of such a nature as to be legally capable of
being settled, and the object of the trust is lawful, and the
settlor has complied with the provisions of law as to evidence,
a good and valid declaration of trust has (prima facie) been
made.    No technical terms or expressions need be used.    It is
sufficient if the language used shows that the settlor intended
to create a trust, and clearly points out the property, the benefi-
ciary, and the disposition to be made of the property.    Ibid. 26.

In the case of *Maxwell* v. *Hoppie*, 70 *Ga.* 152, it was said
that "any agreement or contract in writing made by a person
having the power of disposal over property, whereby such per-
son agrees or directs that a particular parcel of property or a
certain fund shall be held or dealt with in a particular manner
for the benefit of another, in a court of equity, raises a trust in
favor of such other person against the person making such
agreement, or any other person claiming under him volun-
tarily or with notice," citing 1 Perry on Trusts, § 82.    It was
also held in that case that the intention of the parties must in
every instance control.    In the case of *Featherston* v. *Richard-
son*, 68 *Ga.* 501, where the deed, after expressing a nominal
consideration, also expressed the further consideration that the
grantee was to pay off and discharge certain mortgages, it was
held that the deed conveyed the title in trust for the purpose
of paying off the mortgages, and with the vesting of an abso-
lute title, conditioned upon the grantee's performance thereof.
Where a person orally or in writing explicitly or impliedly de-
clares that he holds personal property in presenti for another,
such declaration constitutes him a trustee of such property in
an expressed trust for such other person.    The same principles
of construction apply to a declaration of trust in real property,
except that such declaration must be in writing.    25 Ill. App.
333.    An agreement to hold the proceeds of land for another,

or an agreement, upon consideration of the surrender of a title-bond, to sell the land and, after deducting certain charges, to deliver the residue of the proceeds over to a named person, creates a valid express trust for such purpose. Mohn *v.* Mohn, 112 Ind. 285; Franks *v.* Williams, 37 Texas, 24. An undertaking on the part of a mortgagee, in consideration of the execution and delivery to him by the mortgagor of a deed to the mortgaged property, to sell the same within a given time, and turn the proceeds, after making certain deductions, over to a named person, creates a valid express trust in favor of the latter. Lake *v.* Freer, 11 Ill. App. 576. A direction to invest will create a trust. Craige's Estate, 6 W. N. C. 318; Anck's Estate, 11 Phila. 118. A promise by one person, in consideration of receiving a deed from another to pay, upon the death of the latter, a certain sum to a third designated person, is an express trust. Arnwine *v.* Carroll, 4 Hal. Ch. 620, 886. Where one takes a conveyance of land upon an agreement to support the grantor, and to convey a designated portion to the minor sons of the grantor who are to remain and work on the place, and the sons remain and work as agreed, he takes in trust for the sons as to the designated portion. Jones *v.* Lloyd, 117 Ill. 597. And where one gives property absolutely, but with words suggesting or recommending that it be disposed of in favor of another, those words will create a trust where considered together they ought to be construed as imperative, the subject of the recommendation and the person to be benefited being certain. Blanchard *v.* Chapman, 22 Ill. 341.

It is clear that under the facts of the present case, while the property was conveyed absolutely to the husband, there was an express trust reposed in him to devise it to the daughter. Reading the petition and the deed together, it is apparent that the consideration of the latter was not circumscribed by the recital of the payment of five dollars, and the fact that the purpose for which the wife originally acquired title at the instance of the husband had been subserved; but it further appears, as shown by the petition, that the parents were getting old, that they had only one child, that the parents desired to make a settlement of all their property "by the will of the father, now

about to be drawn, so as to protect said property for the benefit of their said daughter upon their death," and that therefore the deed was made to "enable the husband to make such testamentary settlement." Whether the husband had a right, in the first instance, to compel a reconveyance of the property to him by the wife, without condition or limitation, is a question of no importance, since it appears that the legal title was in her, and the recitation of the purposes for which the conveyance was sought to be made to him is conclusive that he agreed or acquiesced in the conditions upon which she invested him with the title.

3. If it be true then that Cornelius Sullivan took the title to this property, with an express trust reposed in him to devise the same to the daughter, it seems but the natural and manifest result of reason that an injunction would lie at the instance of the cestui que trust to prevent at the hands of the trustee any alienation or encumbrance of the property which would tend to defeat or depreciate the value of the beneficial interest of the cestui que trust. Having accepted the deed and taken possession of the property thereunder, the grantee must be presumed to have assented to its terms. In the absence of anything to the contrary, a trust beneficial to the trustee will be presumed to have been accepted, especially after a long period of time has elapsed without any disclaimer. 27 Am. & Eng. Enc. L. 82, and authorities cited in note 2 ; 1 Beach, Tr. § 39. If the trustee has once accepted the obligation and entered upon the execution of the trust, he can not rightfully lay it down, but must be compelled to proceed and carry out the trust, in accordance with the requirements of the instrument creating it. 27 Am. & Eng. Enc. L. 150, and authorities cited in note 4; 1 Perry, Tr. (4th ed.) § 401 ; 2 Beach, Tr. § 491. The beneficiary has the right to insist that the purposes of the trust be fully accomplished, and that the duties imposed and the uses declared be respected and performed. Thus the trustee will be enjoined from conveying the trust property in violation of his duty, and from mortgaging or encumbering it. 27 Am. & Eng. Enc. L. 247, 248. The same doctrine is announced in 1 High on Injunctions (3d ed.), § 24, where it is

said: "Under the established jurisdiction of equity in matters of trust and its power to enforce by trustees the proper performance of their duties, the court may enjoin trustees from proceeding in disregard of the conditions necessary to the proper exercise of their authority, or from an improper use of such authority, there being no adequate remedy at law," citing State v. Maury, 2 Del. Ch. 141; Pool v. Potter, 63 Ill. 533. So also in 2 Perry on Trusts (4th ed.), § 816, it is said : "The cestui que trust may compel the trustee to the observance and performance of his duty; and if there is reason to suppose, or the court is satisfied, that the trustee is about to proceed in an unauthorized manner, an injunction will be granted to restrain the improper exercise of the legal power in the trustee, and such other orders will be made as will best secure the proper administration of the trusts. . . It is well established that the cestui que trust is entitled to an injunction, where the intended act, if done by the trustee, will be irremediable." So too in 2 Beach on Trusts and Trustees, § 686, the rule is laid down, that where it appears that a trustee is about to make such use or disposal of the trust property as will result in a serious or material loss to the estate, the cestui que trust will be granted an injunction in restraint of the act.

Cornelius Sullivan having died pending the action, without having made the devise contemplated in the quitclaim deed from the wife to him, the daughter still had the right to prosecute the action for the purpose of compelling an equitable enforcement of the trust created by the deed for her benefit. The cestui que trust is entitled to a decree of the court establishing the existence of the trust and declaring what are its limitations, as well as to a judicial construction of the instrument by which the trust is created, and the court has power to enforce against all parties to a valid trust the performance of all duties imposed upon them by the provisions of the trust. 27 Am. & Eng. Enc. L. 263, 307.

This property being impressed with the trust, it was not necessary for the plaintiff, after the death of Cornelius Sullivan, to allege, in order to maintain her petition, that there were no debts due by the estate, or that it was not necessary that the

property involved in said suit be administered for the payment of debts. Having by her petition set out facts sufficient to create a trust in her favor, her right to a decree was prima facie established; and if for any reason she was not entitled to a decree fixing the title to the property in her in pursuance of the trust declared as against the administrator, or any other person claiming an interest in the estate, the onus of showing such to be the fact would be upon them. The plaintiff is not claiming under or through the estate of the deceased. On the contrary, her rights are alleged to flow from the grantor of the deceased. Giving effect to these principles, it is ruled that the plaintiff in error had a right to maintain her petition against the administrator, under the pleadings in this case; and while the decree to be rendered must protect her right to the property resulting from the trust created by the conveyance from the mother to the father in the manner shown, such persons, be they creditors or other persons interested in the estate of the intestate, who may be represented by the administrator of the estate, and who may claim that the property which is the subject-matter of the trust, notwithstanding the existence of such trust, should in law or equity be appropriated first to the liquidation of other demands, must show the existence of such facts as will subject it to such appropriation.

*Judgment reversed. All the Justices concurring.*