### PIONEER MINING CO. v. TIBERG et al.

(Second Division. Nome. June 28, 1913.)

No. 2425.

1. TRUSTS (§ 95*)—CONSTRUCTIVE TRUST—THEFT OF PROPERTY.

The plaintiff brings this suit in equity to impress a trust upon a sum of money now in the custody of the clerk of this court, to whom it was delivered after being taken from the defendant Tiberg, when he was arrested for its theft. He was acquitted on trial, and this suit was begun. The complaint alleges that the defendant Tiberg was plaintiff's foreman in its mine, and that about July 22, 1910, the defendant Tiberg took $15,000, in gold dust belonging to plaintiff, out of the sluice boxes, sold and disposed of it, and, when arrested, the officers delivered the money obtained from the sale of the gold dust to

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

the clerk of this court. Defendant claims to be the owner of the money and is insolvent. On general demurrer, *held*, the facts stated do not create a trust which the court can impress upon the money in the hands of the clerk. The complaint does not show that the defendant appropriated a trust fund.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

2. ATTACHMENT (§ 64*)—EXECUTION (§ 55*)—TRUSTS (§ 361*)—
   SEARCHES AND SEIZURES—CONSTITUTIONAL LAW.
      Where one is arrested for the theft of property, and a sum of money supposed to be the proceeds of the sale of the property is found in his possession by the officers and taken from him and placed in custodia legis, he cannot be sued and the money attached or seized on execution, nor can a suit be sustained to impress a trust upon it on account of the theft, until the status quo be restored, and especially so after a trial and acquittal for the theft.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 181–188; Dec. Dig. § 64;* Execution, Cent. Dig. §§ 137–140; Dec. Dig. § 55;* Trusts, Cent. Dig. §§ 556–559; Dec. Dig. § 361.*]

Plaintiff brings this suit in equity for the purpose of impressing a trust upon certain funds now in the hands of John Sundback, as duly appointed clerk of the court of the district of Alaska, Second division, and alleges in its bill: That the defendant Johan Tiberg, during the month of July, 1910, was in the employ of plaintiff as foreman of the night shift in mining upon a certain placer claim in this division. That during said month of July the plaintiff was the owner of and in possession of said claim and of certain sluice boxes situated thereon, and of the gold dust and the amalgam therein. That the defendant Johan Tiberg, about the 22d day of July, 1910, wrongfully and unlawfully took and carried away from said sluice boxes gold dust, nuggets, and amalgam, the said property of plaintiff, of the value of $15,000, and converted the same to his own use. That thereafter, and in the month of September, 1910, the said Tiberg, after having retorted said amalgam, proceeded to the city of Seattle, state of Washington, and there sold to the United States assay office in said city the said gold dust and amalgam so retorted, and received therefor a certificate representing the value of said gold dust

and amalgam, amounting to the sum of $14,345.02. That thereafter the said Johan Tiberg, alias Edwin Johanson, cashed said certificate and received therefor the sum of $5,345.02 in cash and a draft drawn by the Union Savings & Trust Company on the First National Bank of Portland, Oregon, payable to Edwin Johanson or order, in the sum of $9,000; and thereafter, and during the month of September, 1910, the defendant Johan Tiberg was arrested by a United States deputy marshal in the city of Seattle, Wash., and the said moneys and draft were found upon his person and transmitted to the defendant John Sundback, clerk as aforesaid, as the proceeds of stolen property belonging to plaintiff. That thereafter the said John Sundback caused to be cashed the said draft and received the money therefor in the sum of $9,000. That, by reason of the premises, a trust resulted in favor of the said plaintiff and attached to the said proceeds of said gold dust and amalgam so taken by said Tiberg and exchanged by him as aforesaid, and now in the hands of said defendant clerk, as aforesaid, and the defendants have, by implication, agreed with the plaintiff that they would hold said proceeds of said gold dust and amalgam upon a resulting trust for the plaintiff, and the same is now so held by them. Plaintiff further alleges: That the defendant Johan Tiberg now claims to be the owner of said proceeds of said gold dust and amalgam, and claims that the said defendant John Sundback, clerk as aforesaid, holds said proceeds for his use and benefit, and repudiates said trust, and denies that the plaintiff has any interest in said property. That the defendant Johan Tiberg is insolvent, and that said proceeds are now in the possession of said John Sundback, clerk as aforesaid, in custodia legis, and is not now subject to attachment or garnishment. That plaintiff has no adequate remedy at law. The plaintiff further alleges: That, unless the defendant Johan Tiberg be enjoined and restrained from claiming, demanding, and receiving said proceeds of said gold dust and amalgam, said defendant Sundback, clerk as aforesaid, will deliver up said proceeds to his said codefendant, to plaintiff's irreparable injury and damage. That said proceeds of said gold dust and amalgam are of the

value of $14,345.02. Wherefore plaintiff prays judgment that defendants be enjoined from claiming or holding said proceeds, and it be decreed that plaintiff is the owner of all of said proceeds of said gold dust and amalgam now in the hands of said defendants as aforesaid, and that said property and said proceeds be delivered up to the plaintiff, and that plaintiff have judgment for its costs and disbursements herein, and that plaintiff have such other and further relief as to the court may seem just and equitable.

To this complaint the defendant Tiberg interposed a general demurrer, alleging that the complaint does not state facts sufficient to constitute a cause of action.

After oral arguments, the attorneys for the respective parties submitted written briefs. The defendant contends that the bill does not state a cause of action either at law or in equity, first, because it appears upon the face of the bill that the money or property was taken from the person of the defendant Tiberg by an officer of the law, after having placed Tiberg under arrest, and is now in custodia legis; and, second, because the property in question is not a trust fund nor the proceeds of a trust fund, and that no fiduciary or trust relation at any time existed between the defendant Tiberg and the plaintiff company with relation to the amalgam or its proceeds, and that consequently equity has no jurisdiction and cannot impress a trust under such circumstances.

Plaintiff contends, through its attorneys, that, when property has been stolen, equity recognizes that the property always belongs to the true owner, and therefore the proceeds must also belong to him and may be reclaimed in a suit in equity against any one holding in bad faith, and insists that neither a fiduciary relation nor a trust estate is necessary to give a court of equity jurisdiction, and further that no right of the defendant under the fourth amendment of the Constitution of the United States would be violated by holding the moneys taken from the person of the defendant by a United States deputy marshal after the arrest of the defendant upon criminal process. This briefly states the facts as

4 A.R.—43

they appear from the pleadings and the contentions of the respective parties.

Cochran & Lomen, for plaintiff.
Grigsby & Willett, for defendants.

MURANE, District Judge. We will first consider the question of the jurisdiction of a court of equity to impress a trust upon property or the proceeds of property, where the original property was not a trust estate, and no fiduciary relation existed between the owner and the person converting or appropriating the same. In this case the complaint does not show the defendant to have been in a position of trust or confidence; in other words, he was not the custodian, trustee, nor bailee of the amalgam, gold dust, and nuggets contained in the sluice boxes of plaintiff.

The great weight of authority seems to be that, unless some such relation exists, no trust arises by implication of the law, either ex maleficio or in invitum. The following are a few of the many definitions of a trust given by the courts:

"A trust in common parlance may be said to be a confidence reposed by some one in some one, and for some public or private purpose." Ex parte Faulkner, 1 W. Va. 269, 298.

"A trust signifies a holding of property, subject to a duty of employing it or applying its proceeds according to the directions given by the person from whom it was derived." Munroe v. Crouse, 59 Hun, 248, 12 N. Y. Supp. 815.

"A trust, in its simplest elements, is a confidence reposed in one person, who is termed the 'trustee,' for the benefit of another, who is called the 'cestui que trust'; and it is a confidence respecting property which is thus held by the former for the benefit of the latter." Carter v. Gibson, 29 Neb. 324, 45 N. W. 634, 26 Am. St. Rep. 381.

"A trust is an equitable obligation, either expressed or implied, resting upon a person by reason of a confidence reposed in him, to apply or deal with property for the benefit of some other person, or for the benefit of himself and another or others, according to such confidence." McCreary v. Gewinner, 103 Ga. 528, 29 S. E. 960.

A trustee, in the widest meaning of the term, is defined to be a person in whom some estate, interest, or power in or affecting property of any description is vested for the benefit of another. Taylor v. Davis, 110 U. S. 330, 4 Sup. Ct. 147,

28 L. Ed. 163; Truedale v. Philadelphia Trust Safe Deposit & Ins. Co., 63 Minn. 49, 65 N. W. 133; Robertson v. Bullions, 9 Barb. (N. Y.) 64, 101.

In Henninger v. Heald (N. J. Ch.) 30 Atl. 809, the court says:

"The wrongdoer who becomes possessed of property under such circumstances has been styled 'a trustee,' but this is for want of a better term, and because he has no title to property and really holds it for the true owner. It might as well be said that, where two persons conspire to possess themselves of the personal property of another when he brings trover for its recovery, they should be styled 'trustees' instead of 'tort-feasors,' and should be permitted to claim the benefit of a lien for care or for provender."

All instances of constructive trusts may be referred to what equity denominates fraud, either actual or constructive, in violation of fiduciary obligation. Perry, in his work on Trusts, defines constructive trusts as "those which arise when a person clothed with some fiduciary character, by fraud or otherwise, gains some advantage to himself." Again, in section 128, "if one who stands in no fiduciary relation appropriates another's money and invests it in property, no trust results to the owner of the money."

The complaint does not show that the defendant appropriated a trust fund. He was employed as night foreman in mining, but his relation to the amalgam appears no different from that of any other laborer. Under such a state of facts and the foregoing authorities, it appears clear that equity would have no jurisdiction to impress a trust upon the fund in question.

Upon the other question, it appears from the complaint that the fund in question was taken from the person of the defendant Tiberg after his arrest on a criminal charge. Article 4, amendments to the Constitution, protects a person, his house, papers, and effects, against unreasonable search and seizure. A person arrested on a criminal warrant may be searched, and anything which is evidence of the commission of the crime with which he is charged, or with which he may do personal violence to himself or others, or by means of

which he may effect an escape, may be taken from his person and held by the officer having the prisoner in charge. This is permitted on the grounds of public policy, but no individual citizen should be permitted to take advantage of this necessary violation of the person of the prisoner. The case of Dahms v. Sears, reported in 13 Or. 47, 56, 11 Pac. 895, 896, very clearly states what appears to be the true rule:

"I am of the opinion that property taken from a prisoner under such circumstances is not the subject of attachment or levy by virtue of an execution. The security of the public may justify the searching of a prisoner confined in prison upon criminal or even civil process, and the taking from him of any property in his possession that would aid him to make an escape. It would probably be regarded, under such circumstances, as a reasonable search and seizure; but to allow private parties to take advantage of the circumstances in order that they may secure a personal benefit would be a violation of that faith which the commonwealth owes to persons held in custody under its authority and laws. It would lead to oppression and abuse. The object and purpose of an arrest under civil and criminal process would be perverted, and schemes and devices be resorted to by importunate creditors to enforce a payment of their demands that would outrage justice and the right to personal security. The case under consideration is not free from suspicion that unscrupulous measures were employed for the purpose indicated. The attachment of the money taken from the person of Keltener followed in very quick succession its seizure, and gives rise to the inference that collusion existed between the officers of the prison and the representatives of the creditors. One of the attachments was levied upon the money the same day it was taken from Keltener."

See, also, Cooley's Constitutional Limitations (5th Ed.) pp. 365–373, and notes.

The case of State of Iowa v. Williams, 61 Iowa, 517, 16 N. W. 586, is one very similar to the one at bar, and holds that, before any third party can proceed against property taken from a prisoner, the statu quo must be restored, especially so after a trial and an acquittal. It may be suggested that the complaint does not show a trial and an acquittal in the case in which Tiberg was arrested and the fund in question taken from his person. Neither does the complaint show a conviction in that case, and, under our law, the presumption of innocence must be indulged until a conviction is shown.

What plaintiff's remedy is under our statute is not necessary for the consideration of the court at this time.

The principal case relied upon by plaintiff is Ætna Indemnity Co. of Hartford, Conn., v. Malone et al., 89 Neb. 260, 131 N. W. 200. It will be observed in that case that the defendants had been convicted, and the controversy was between other parties, and no question of constitutional right seems to have been raised or involved, and the only authority cited in the opinion is Newton v. Porter, 5 Lans. (N. Y.) 416.

Had the defendant Tiberg been convicted in the criminal case, the plaintiff would undoubtedly have received the fund in controversy, under section 266, c. 30, of the Code of Alaska, but, the defendant not having been convicted, it would seem, as said in the Iowa case, he was entitled to go out of court and be placed in the same situation in which he was before the money was taken. This rule will undoubtedly do injustice in some instances, but it is better that injustice be done some times to an individual than that the personal liberties, private documents, and personal effects of the masses be placed at the mercy of unscrupulous litigants.

Paragraph 10 of the complaint shows that the defendant Tiberg claims to be the owner of the fund in controversy, and denies that plaintiff has any interest in the fund. Therefore the main question to be passed upon is the question of title to the personal property held by the clerk of the court, and, if it is not a trust fund, parties have a constitutional right to have the question of title passed upon by a jury.

The bill does not state a cause of suit in equity, and plaintiff's attorneys admit that it does not state a cause of action at law; therefore the demurrer should be sustained; and it is so ordered.