## BELL, guardian, *v.* WATKINS.

Testator having several children besides three single daughters, one of them
    a widow, gave his entire estate, both real and personal, to these three
    daughters, during their natural lives or while they remained unmarried,
    and directed that should either marry or die, the survivors should "have
    the sole charge until their marriage or death," and also, that on the
    death or marriage of all three, then his property, both real and personal,
    should be equally divided among all his children, share and share alike.
    He further directed that the corpus of his estate "be only as a life-estate,
    or during their single or unmarried state, not giving them the right to

sell and dispose of the real estate." He then declared: "I further will that my granddaughter, Mamie M. Bell, do receive a support during her life, or until she should marry," adding that should her mother (the testator's widowed daughter above referred to) marry again, it was his desire that the granddaughter should not receive the benefits of this bequest. *Held,* that the testator intended to charge his estate in the hands of his three daughters, or the survivor of them who should remain single, with the support of his granddaughter, so long as both herself and her mother should live and remain unmarried, and that this charge would follow the real estate into the hands of a purchaser from the executors, unless it was legally sold by them to pay the debts of the testator. *Held* also, that upon the facts alleged in the petition now under review, the sale by the testator's executors of the land belonging to his estate did not, in any view of the questions involved, pass to the purchaser an absolute title, but that he holds the land thereunder subject to a charge upon the same for the granddaughter's support out of the income derived therefrom, so long as the conditions last above indicated shall exist. It follows that this petition set forth a good cause of action, and ought not to have been dismissed on demurrer.

Argued January 18, — Decided May 26, 1898.

Equitable petition. Before Judge Gamble. Washington superior court. March term, 1897.

*Rawlings & Hardwick*, for plaintiff.
*Evans & Evans*, by *James K. Hines*, for defendant.

Little, J. E. G. Bell, guardian of Mamie M. Bell, filed an equitable petition against William Watkins, in the superior court of Washington county, in which she alleged that in the year 1885 George Wiggins died testate, and that L. D. Wiggins and M. F. Wiggins were named as executors in his will; that the will was duly probated, and the executors qualified; that the testator left "about enough personal property" to pay his debts, and owned at the time of his death a certain tract of land in Washington county, containing two hundred and fifteen acres, fully described in the petition; that by his will he made disposition of his property in the following words: "I give and bequeath unto my three daughters, E. G. Bell, A. N. Watkins, and M. F. Watkins, my entire estate both real and personal, for and during their natural lives, or while they remain unmarried; and should either marry or die, I desire the remaining ones to have the sole charge until their marriage or death; but I further will and desire that on the death or marriage of

my three daughters mentioned above, then all of my property, both real and personal, to be divided between all of my children, share and share alike. I further will that the corpus of my estate be only as a life-estate, or during their single or unmarried state, not giving them the right to sell and dispose of the real estate. I further will that my granddaughter, Mamie M. Bell, do receive a support during her life or until she marry." Petitioner alleged that under this provision of the will the support of Mamie M. Bell was made a charge upon the estate of the testator during her life and while she remained unmarried, and that said Mamie M. Bell is still unmarried. The petition further alleged, that in December, 1886, the executors, having obtained an order from the court of ordinary so to do, sold the land at public outcry, and that William Watkins purchased the same, went into possession, and has ever since remained in possession. The petition further alleged, that in consequence of such sale Mamie M. Bell had been deprived of all support and maintenance out of the profits of the land; that two hundred dollars per year is required for her support and maintenance, and that since the sale she had received nothing from the estate of the testator, nor from the land, in the way of a support or otherwise, nor was any part of the proceeds of the land so appropriated. The prayer of the petition is, that a trustee be appointed to rent the land and to pay over to the plaintiff as guardian during the minority of her ward such an amount of the rents, issues and profits of the land as is necessary for the support of the ward, and to continue the same so long as she is entitled thereto under the terms of the will; and that the trustee be further directed to pay over to the petitioner on account of her ward an amount of money equaling that expended for her support and maintenance for the time which has elapsed since the land was sold, such sums to be paid out of the rents, issues and profits of the land. There was also a prayer for general relief.

To this petition was attached a copy of the will of George Wiggins and also a codicil to that instrument, which is in the following words: "I give and bequeath unto my three daughters, Ellafair G. Bell, formerly Ellafair G. Wiggins, Amanda N.

Wiggins, and Mary F. Wiggins, my entire estate both real and personal, for and during their natural lives, or while they remain unmarried; and should either marry or die, I desire that the remaining ones to have the sole charge until their marriage or death; and I further will that on the death or marriage of my three daughters mentioned above, then my property, both real and personal, to be equally divided between all my children, share and share alike. I further will that the corpus of my estate be only as a life-estate or during their single or unmarried state, not giving them the right to sell and dispose of the real estate. I further will that my granddaughter, Mamie M. Bell, do receive a support during her life, or until she should marry. Should my daughter Ellafair G. Bell marry again, it is my desire that the daughter of her body, Mamie M. Bell, do not receive the benefits mentioned in this my codicil. I desire that this last-named codicil do not prevent the payment of all my just debts by my executors named in the will." It appears from the record that this codicil was also duly probated.

At the March term, 1897, of Washington superior court, the plaintiff amended her petition, in which amendment she alleged that she (Mrs. E. G. Bell) is still unmarried; that A. N. Watkins and M. F. Watkins are married; that all three of them have relinquished their claim to the land; that the support of her ward has cost her one hundred dollars per annum from the date of the sale of the land. She further alleges in the amendment, that the sale of the land by the executors was not necessary to pay his debts; that while the order of sale contains the statement that the leave to sell was granted "in order to pay the debts of said deceased and for the purpose of making distribution among his heirs at law, such in fact was not true, and it was not necessary to sell the land to pay the debts; that the application made by the executors to the ordinary for leave to sell stated that the only purpose of the sale was to make distribution among the heirs at law; and that defendant, at the time he purchased the land, had full knowledge and notice of all the facts alleged in the petition, and of the provision of the will of the testator charging the land with the support of petitioner's ward. By amendment also she prayed that judgment

be rendered in her favor against the defendant, to be satisfied out of the land, for an amount equivalent to the support of the ward of petitioner from the date of the sale of the land. She also prayed that the court would frame such a decree as will secure to her said ward a support out of the land and of the rents and profits thereof as long as her ward remains entitled thereto under the terms of the will. The amendment to the petition was allowed by the court and ordered filed on the 8th day of March, 1897; and on the same date argument was had on a demurrer to the petition filed at the appearance term of the case. The grounds of the demurrer, in general terms, were, that the petition set forth no cause of action; that the petitioner was not entitled to the relief prayed for; that as the petition set forth the fact that the land was sold under order of the proper court, the legality of the sale was thus admitted, because the will showed that there was no specific trust engrafted on the land, and the legacy was payable generally out of the estate; that the allegation that the land was sold by order of the proper court would have the effect to transfer the charge, if any existed in law, from the land to the purchase-money; and that it was not averred that the defendant was insolvent. After argument the court sustained the demurrer and ordered the petition to be dismissed.

There are two questions which arise for our determination in this case: First, whether, under the will, the estate of the testator became charged with the support of his granddaughter, Mamie M. Bell, as long as the contingencies provided by the will should continue to exist. Second, if the estate was so charged in the hands of the legatees, did the defendant, who purchased the land at executors' sale, take the same subject to that charge? It may here be noticed that the value of the land is not set out, nor is a sum named as its yearly rental value; but no question as to this feature of the case was raised by special demurrer, or by the demurrer which was filed. Hence this court, in determining that the land, under the facts alleged, is subject in the hands of the defendant to be charged with the support of the petitioner's ward, must be understood as dealing only with the questions made by the petition and the de-

murrer. In the body of the will, the testator, after making certain specific bequests of personal property to certain of his children, devised and bequeathed the balance of his estate to each and all of his children and certain heirs of a named son, share and share alike. By a codicil, already set out in full, the testator devised and bequeathed his real and personal estate to certain of his children. The legal effect of the codicil is to vest title of the estate in his three daughters for life, subject to be divested by death or marriage; the testator expressly directing that the corpus of the estate should be treated only as a life-estate in the hands of his daughters. He thus impliedly negatived the right of the daughters to sell and dispose of any of the property, while in express terms he directed that they should not have the right to sell and dispose of the real estate. The scheme of the testator's will, as made manifest by this codicil, was, that the three daughters should take an estate in the property which should continue only during the time they should remain unmarried, and not to extend beyond a life-estate, with the right of survivorship for life to such of them as remained unmarried, until the death or marriage of all; the evident intention being that his land should be used as a support for all three of his daughters while in a dependent condition. Mrs. Bell, the petitioner, one of his daughters, was a widow, having a minor daughter, Mamie M. Bell, who the testator desired should also receive a support out of his estate so long as the same might be necessary; and therefore he provided that this granddaughter should receive a support during her life or until she should marry, and in the event his daughter, E. G. Bell, should marry again, then the support which he had provided for his granddaughter should cease. It was the undoubted intention of the testator that this support which he had provided for his granddaughter should come generally from his estate, because it is not by words of fair implication limited to either the real or personal estate. The petitioner alleges that this provision of the will constitutes the support of the granddaughter a charge on the entire estate, real as well as personal.

Provisions in wills may be such that a trust is necessary in

order to carry out and enforce them. In such a case an intention on the part of the testator to create the trust will generally be inferred. 27 Am. & Eng. Enc. L. 38. In 1 Perry on Trusts, § 152, it is said that "a distinction must be observed between a devise to a person for a particular purpose, with no intention to confer upon him any beneficial interest, and a devise with the view of conferring the beneficial interest and subject to a particular charge, wish, or desire." By section 3148 of the Civil Code, relating to trust estates, etc., it is provided that no formal words are necessary to create such an estate; that whenever a manifest intention is exhibited that another person shall have the benefit of the property, the grantee shall be declared a. trustee. And in relation to what constitutes a trust estate, it is provided in section 3162 of the same code, that "precatory or recommendatory words will create a trust, if they are sufficiently imperative to show that it is not left discretionary with the party to act or not, and if the subject-matter of the trust is defined with sufficient certainty, and if the object is also certainly defined, and the mode in which the trust is to be executed." As illustrating an application of the principles of law just cited, in the case of *Hunter* v. *Stembridge*, 12 *Ga.* 192, where a testator by his will devised to his son Henry, in fee, the plantation whereon he lived, and, after bequeathing a negro woman to his wife during her life, used the following words : "And I also allow my son Henry to give her a support off my plantation during her lifetime," it was held that the testator used the word "allow" as expressive of his intention that his son Henry should support the testator's widow during her life, from the rents, issues and profits of the plantation, and that Henry took the same under the will subject to that charge, which a court of equity would enforce. In that case it appeared that the administrator had sold the plantation, and that the bill was filed to subject the fund arising from such sale to the support of the wife. In ruling on the questions in the case, the court held that the complainant could maintain the action, as it was competent for her to elect to go upon the fund instead of the land in the possession of the purchaser at the administrator's sale. In the present case the words used by the testator are neither

precatory nor recommendatory. " I further will that my grand-daughter do receive a support" is the language used in the will. It is direct, and its effect is to make her a legatee under the will to the extent of receiving a support from his estate for and during the time to which he limited it. This being true, the grand-daughter was entitled to receive a support from the estate of the testator while it was in the hands of the three daughters as provided in the codicil to his will. The like right existed when such estate should pass to the hands of either one or two of such daughters under the contingencies referred to. That right attached to the whole of the estate, real as well as personal, so long as the granddaughter remained in the condition to receive the support under the terms of the will; and the holders of the estate at all times until the death or marriage of the grand-daughter, or until the marriage of her mother, held such estate subject to the charge of the support of the granddaughter.

We are, of course, assuming, thus far in the argument, that no part of such estate was necessary to pay the debts of the testator or the expenses of administration. Of course these are charges upon the property, to be met before the payment of legacies, and whatever part of the estate was required for these expenses must be so appropriated; but when they were settled, this charge of support attached to the remainder, and it must be ruled that such of the property of the estate as remained after the payment of debts and expenses was impressed with the trust, or a charge in the nature of a trust, for the support of the granddaughter, and the holders of it were trustees to this extent. We rest this branch of the case on the principles above cited, and that also declared in the case of *Maxwell* v. *Hoppie*, 70 *Ga.* 152. The support of the granddaughter then being a charge upon the property, it followed the land in dispute into the hands of the purchaser at executors' sale, unless it was legally sold to pay debts of the testator. Section 3067 of the Civil Code provides that "annuities, or legacies, or debts charged upon lands by testaments, attach thereto and follow the lands in the hands of all persons." It is directly alleged in the petition that the defendant purchased the land with full knowledge and notice of all the facts in the petition, as well as the

provisions of the will. It is also alleged, that the land was not sold by the executors for the purpose of paying debts; that it was not necessary to sell the land in order to pay the testator's debts; and that the executors applied for the order to sell, for the sole purpose of making distribution of the estate among the heirs at law. Of all these facts the petition charges that the defendant had full knowledge and notice. If these things be true, then the defendant, who purchased the land at executors' sale, purchased it subject to the charge imposed for the support of the granddaughter. Indeed, unless the land was sold for the purpose of paying the debts which the testator owed, or the expenses incident to the administration of his estate under the will, it could not be freed from the charge in favor of the granddaughter. Taking the allegations of the petition as true, it must be held that the petition was not subject to demurrer, but that it set forth a cause of action which would entitle the petitioner to relief on proof of the facts alleged; and that consequently, the court erred in sustaining the demurrer to the petition.

*Judgment reversed. Fish, J., dissented. The other Justices concurred.*