Proctor *et al. v.* Redfern *et al.*

**176**

No. 10929.   MARCH 14, 1936.   REHEARING DENIED MARCH 28, 1936.

*Smith & Smith* and *R. S. Wimberly,* for plaintiffs.

*Park & Strozier, A. W. Cozart,* and *Brainerd Currie,* for defendants.

BECK, Presiding Justice.   On December 10, 1928, W. J. Proctor executed and delivered to Wesleyan College a deed conveying certain described real estate in Muscogee County, Georgia, in which is the recital:  "W. J. Proctor hereby reserves the rents, issues, and profits and possessions from, in, and to land hereby conveyed for his natural life, but the title to all the real estate is hereby vested in said college eo instanti.   A part of the consideration of this deed is the agreement on the part of Wesleyan College that it will pay to the brother of W. J. Proctor, said brother being J. B. Proctor of Meigs, Thomas County, Georgia, the sum of one hundred dollars per month from the rents, issues, and profits of said realty from the date of the death of W. J. Proctor to the date of the death of J. B. Proctor.   And in accepting this deed said college hereby agrees to make such payment."   W. J. Proctor died on February 22, 1932, and Wesleyan College went into possession of the land under the deed referred to.   On February 27, 1932, J. B. Proctor, for the stated consideration of one dollar and his love and affection for the children of his deceased brother, W. J. Proctor, executed a deed containing the following recital:  "I hereby convey and quitclaim unto the children of my brother, W. J. Proctor, to wit, Ernest C. Proctor, George W. Proctor, Frank B. Proctor, and Henry S. Proctor, all of my equity, right, title, or interest in all of [the property referred to above], . . and all my rights are transferred and quitclaimed to the parties aforesaid; and while quitclaiming it all to them, I do not guarantee or warrant anything or any rights under said instruments whatever."   On October 7, 1932, Wesleyan College, for the stated consideration of one dollar "and in settlement of any and all obligations or responsibilities on the part of Wesleyan College to said J. B. Proctor, aforesaid, and the acceptance of said deed by the party of the first part,"

released and quitclaimed the land unto Mrs. Katie Proctor Redfern. The children of W. J. Proctor above mentioned, to whom J. B. Proctor had executed his quitclaim deed, brought suit against Wesleyan College, Mrs. Katie Proctor Redfern, and John G. Cozart as executor of the last will of W. J. Proctor, alleging the facts set forth above, and in addition alleging that no payments had been made to J. B. Proctor or to plaintiffs, as stipulated in W. J. Proctor's deed, either by Wesleyan College or by Mrs. Katie Proctor Redfern, although the rents, issues, and profits from said land amounted to some four thousand dollars each and every year. They prayed for judgment against Wesleyan College and Mrs. Redfern for $100 per month from the date of the death of W. J. Proctor to the date of verdict, and from the date of verdict until the death of J. B. Proctor; that this judgment be made a special lien on the land described; and for other equitable relief. Each of the defendants filed a general demurrer to the petition. The demurrers were sustained and the case was dismissed. The plaintiffs excepted.

The judge, in rendering his opinion sustaining the general demurrers, said: "Where A deeds land to B, part of the consideration being a promise by B to A to pay an annuity to C, a stranger to the contract, suit may be maintained by A against B for failure to pay the annuity, but can not be maintained by C in his own name. C being an utter stranger to the contract, furnishing none of the consideration, and no trust being created for his benefit under the terms of the contract, he can not maintain a suit for the breach of the contract;" citing *Shropshire* v. *Rainey*, 150 *Ga.* 566, 574 (104 S. E. 414), and Code of 1933, § 3-108. The case before us presents this question: Where A conveys land to B, reserving in the deed the rents, issues, and profits to himself for life, and providing in the deed that after his death B shall pay to C for life one hundred dollars per month from the rents, issues, and profits from the land, can C enforce the provisions made for him in said deed? And if C can enforce the provisions made for him in the deed, can his assignee of these rents, issues, and profits maintain a suit against B and any grantee in a deed made by B conveying the land, to enforce and collect the annuity provided out of the rents, issues, and profits? In Story's Equity Jurisprudence (3d ed.) 524, § 1244, in chapter 32 dealing with implied trusts, the author

says: "Another class of implied liens or trusts arises, where property is conveyed inter vivos, or is bequeathed or devised by last will and testament, subject to a charge for the payment of debts, or to other charges in favor of third persons. In such cases, although the charge is treated, as between the immediate parties to the original instrument, as an express trust in the property, which may be enforced by such parties or their proper representatives; yet, as between the trustees and cestuis que trust, who are to take the benefits of the instrument, it constitutes an implied or constructive trust only; a trust raised by courts of equity in their favor, as an interest in rem, capable of being enforced by them directly by a suit brought in their own names and right. Thus, for example, if a devise is made of real estate, charged with the payment of debts generally, it may be enforced by any one or more creditors against the devisee, although there is no privity of contract between him and them." In 3 Pomeroy's Equity Jurisprudence (4th ed.), § 1244, it is said: "Another species of equitable lien not growing out of contract directly between the parties arises when specific property— a lot of land, a fund or securities, or the land contained in a residuary devise—is conveyed, devised, or bequeathed subject to or charged with the payment of debts, legacies, portions, or annuities in favor of third persons given by the same instrument. The legal title to the property vests in the grantee, devisee, or other recipient, but a lien thereon is created in favor of the beneficiary named, which can be enforced in equity. . . Such charges may be contained in conveyances inter vivos, and are sometimes found in family settlements, real estate settled upon sons being charged with the payment of portions in favor of daughters, and the like. They are much more frequently, especially in this country, found in wills." In Redfearn on Wills, the author says: "A charge is most often found in cases where the testator has given property to one person with the provision that he pay a certain sum to another person, or furnish a support to some one for a named period of time." This court has often considered and enforced such provisions.

In *Dallas* v. *Heard*, 32 *Ga.* 604, Lucinda Lane conveyed certain real and personal property to the defendants upon the consideration that they would pay her debts and pay her an annuity of $350 a year. A suit was brought by a creditor to enforce that provision. This court, after holding that the life-estate of Lucinda Lane in

the property was bound for the payment of this debt while in her hands and before assignment to defendants, said: "The next question, as to whether the plaintiff, he being no party to the agreement, can enforce this agreement against these defendants, in equity, is one which is no longer open, for it is controlled by the decision of. this court" in *Bell* v. *McGrady, 32 Ga.* 257. "The firm, Gardner & Kendrick, parties in a livery-stable, buggies and horses, etc., sold and conveyed the livery-stable and their entire stock to McGrady, one of the defendants, McGrady agreeing, in part consideration of such purchase, to pay all the debts and liabilities of the firm of Gardner & Kendrick. Bell, the holder of a note on Gardner & Kendrick, filed his bill against McGrady to compel a payment of the note on Gardner & Kendrick, both of whom were insolvent. This court, on demurrer, sustained the bill, holding that 'it was proper for this creditor to go into equity to enforce this agreement in behalf of himself and others.' Behind a decision directly in point, as we hold this to be, this court will not go. In that case, Gardner & Kendrick, as Mrs. Lane in this, had parted with the entire dominion of the property. The agreement was not a mere declaration of intention in favor of the creditors, that might be recalled or controlled by the grantor; but it was an executed trust." In *Bell* v. *McGrady,* supra, this court said: "We think the bill in this case well brought. McGrady, by virtue of his agreement with Gardner & Kendrick, became trustee to pay their debts." In *Maxwell v. Hoppie, 70 Ga.* 152, 159, it was said: "This court, in *Hunter* v. *Stembridge, 12 Ga.* 192, held that where a testator by his will devised to his son Henry the plantation whereon he lived, in fee, and after bequeathing a negro woman to his wife during her life, used the following words: 'and I also allow my son Henry to give her a support off my plantation during her life time,' that the testator used the word 'allow' as expressive of his intention, that his said son should support the wife during her life, off the plantation, and that Henry took the same under the will subject to that charge, which a court of equity will enforce. It is immaterial that all the foregoing were cases arising under wills. The sections quoted above from our Code do not confine the rules therein prescribed to wills, but apply them to all contracts or agreements, and other transactions by which a trust is declared in writing." And in *Maxwell* v. *Hoppie,* this

court said: "Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity, raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice," citing 1 Perry on Trusts, § 82. It was also held that the intention of the parties must in every instance control.

In *Featherstone* v. *Richardson,* 68 *Ga.* 501, where the deed, after expressing a nominal consideration, also expressed the further consideration that the grantee was to pay off and discharge certain mortgages, it was held that "the deed conveyed the title in trust for the purpose of paying off the mortgages, and with the vesting of an absolute title, conditioned upon the grantee's performance thereof." An undertaking on the part of a mortgagee, in consideration of the execution and delivery to him by the mortgagor of a deed to the mortgaged property, to sell the same within a given time, and turn the proceeds, after making certain deductions, over to a named person, was held, in Lake *v.* Freer, 11 Ill. App. 576, to create a valid express trust in his favor. In Jones *v.* Lloyd, 117 Ill. 597 (7 N. E. 119), it was held that where one takes a conveyance of land upon an agreement to support the grantor, and to convey a designated portion to the minor sons of the grantor who are to remain and work on the place, and the sons remain and work as agreed, he takes in trust for the sons as to the designated portion. In Blanchard *v.* Chapman, 22 Ill. App. 341, it was held that where one gives property absolutely, but with words suggesting or recommending that it be disposed of in favor of another, those words will create a trust where considered together they ought to be construed as imperative, the subject of the recommendation and the person to be benefited being certain. See *McCreary* v. *Gewinner,* 103 *Ga.* 528 (29 S. E. 960), where the decisions above referred to are cited approvingly. In *Gordon* v. *Green,* 10 *Ga.* 534, it was said: "It was agreed between A and B, that if B would undertake the management of A's affairs and collect in certain funds due to her, that 'B should retain, out of the first money received on her account, the amount of $1,000, five hundred of which was to be his then, and the remaining five hundred he was to retain and use

as his own, but at her death was to pay over to C the amount of the five hundred dollars, without interest:' *Held*, that this agreement created a gift to B in trust for the use of C, to be paid to C at the death of A, without accountability for interest. . . No particular form of words is necessary to create a trust. It will be sufficient if the intention be manifest that the donee shall not have the sole beneficial interest in the property." In *Hitchcock* v. *Culver*, 107 *Ga.* 184 (33 S. E. 35), this court said: "The deed declared, among other things, that the grantees in accepting the same agreed to furnish Mrs. Thomas, 'during her lifetime, annually, from time to time as she may demand it, a sufficiency of food and clothing and other actual necessaries suitable to her condition in life, and this support is made a charge upon the annual rents, issues and profits of said land, but not upon the land itself.'" In the case before us the deed provided that the grantee should pay J. B. Proctor during his life one hundred dollars per month from the rents, issues, and profits of the land. In *Bell* v. *Watkins*, 104 *Ga.* 345 (30 S. E. 756), the testator gave certain land to his daughters. He then declared: "I further will that my granddaughter, Mamie M. Bell, do receive a support during her life, or until she should marry." The court held: "That the testator intended to charge his estate in the hands of his three daughters . . with the support of his granddaughter, . . and that this charge would follow the real estate into the hands of a purchaser from the executors, unless it was legally sold by them to pay the debts of the testator." "A devise or bequest upon condition of making payment to third persons is usually equivalent to a devise or bequest upon a trust." *Prince* v. *Barrow*, 120 *Ga.* 810 (48 S. E. 412).

Some of the cases from which the foregoing quotations are taken and some of those cited may not be identical with the instant case on all the facts thereof, but they are substantially similar to the case we are now considering, and so similar that the rulings made and the reasons given for the rulings made are applicable to this case; and we are satisfied the principles announced are sound under our law. We are therefore reversing the ruling of the court below, sustaining the general demurrer to the petition.

*Judgment reversed. All the Justices concur, except*

GILBERT, Justice, dissenting. The case presents the question: Where A conveys land to B, reserving in the deed the rents, profits,

and issues to himself for life, and providing in the deed that after his death B shall pay to C for life $100 per month from the rents, profits, and issues from the land, can C enforce the provisions made for him in the deed; and if C can enforce the provisions in the deed, can his assignee of those rents, profits, and issues maintain a suit against B and any grantee in the deed made by B conveying the land, to enforce and collect the annuity provided out of the rents, profits and issues? The rule is not harmonious in the various jurisdictions of the country, but it is made plain in the Reports of this State that the English rule has been adopted in Georgia, and this is expressed in the Code of 1933, § 3-108, as follows: "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, shall be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." As suggested in the quoted section, there are exceptions to the general rule, and the Reports of this State contain many cases in each category. In *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245), Justice Lumpkin discussed practically all of the former decisions of this court; and in *Shropshire* v. *Rainey,* 150 *Ga.* 566, 571 (supra), cases falling under the general rule and those under the exception are referred to. For the purposes of the present case, it may be stated that for the right to exist in a third party to maintain an action on a contract between other parties, and under which some benefit was intended to be conferred on him, it must appear that a trust was created for his benefit or that he was a party to the contract or that his relation or status has been changed by the contract. The present case does not come within any of the exceptions that are recognized. It does not appear from the record that J. B. Proctor has been receiving any benefits whatever from his brother, W. J. Proctor, the grantor in the deed to Wesleyan College, or that he was in any sense a creditor. There was no privity in the contract as to him. It follows that, not having been accustomed to any benefits from W. J. Proctor, he would not suffer a change of relation or status in the event Wesleyan College failed to pay him any annuity from the rents, profits, and issues of the land. Nor can it be contended that a trust was created for his benefit. In consideration of the deed, Wesleyan College merely agreed to pay J. B. Proctor, after the death of

W. J. Proctor, $100 per month *from the rents and profits.* No charge was put upon the land itself, and a charge upon the rents and profits, if any, does not constitute a charge upon the land. *Hitchcock* v. *Culver,* 107 *Ga.* 184 (supra). Compare *Allanta, Knoxville &c. Ry. Co.* v. *McKinney,* 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 A,m. St. R. 215). There must be in existence a res upon which a trust, if any, can attach. Manifestly, the rents and profits were only in the future. Nor can it be said that there was created a covenant running with the land. In *Rosen* v. *Wolff,* 152 *Ga.* 578, 583 (110 S. E. 877), it was said: "There is much confusion and conflict in the authorities upon the subject of what constitutes a personal covenant and what constitutes a covenant running with the land. If a covenant is such that its performance or nonperformance must affect the nature, quality, value, or mode of enjoyment of the demised premises, it is not a mere personal covenant, but one that runs with the land and binds assignees of the covenantor as well as the covenantee and his personal representatives." The agreement to pay J. B. Proctor did not affect the "nature, quality, value, or mode of enjoyment of the demised premises," but was an obligation to pay from any rents and profits without any restrictions upon the use and enjoyment of the land itself. There does not seem, therefore, to be anything in the case to bring it within the exceptions; and the demurrer was properly sustained as against the petitioners to whom J. B. Proctor had deeded his interest. Moreover, assuming but not conceding, that there was originally a covenant running with the land, the beneficiary was J. B. Proctor himself, after the death of W. J. Proctor, .and when he made the arrangement with Wesleyan College, as hereinafter referred to, by which he caused the conveyance to his daughter, Mrs. Redfern, "in settlement of any and all obligations or responsibilities on the part of" Wesleyan College to J. B. Proctor "by reason of the provision in the deed of W. J. Proctor, aforesaid, and the acceptance of said deed" by Wesleyan College, the covenant, whether running with the land or being only a personal one, was by that agreement wiped out instanter as to J. B. Proctor, and the deed passed to Mrs. Redfern without any covenant whatsoever.

But even assuming that J. B. Proctor had a right to bring an action under the contract, and that his assignees had the same

right, the petition does not set forth a cause of action. Although the petition contains certain conclusions of law as to a charge having been put upon the land by reason of the conveyance to Wesleyan College, the exhibits do not bear out such allegations, and the demurrant is not bound by the conclusions. A demurrer admits only those allegations well pleaded. Nowhere in the petition is there any allegation that Wesleyan College ever received any rents and profits from the land. Hence it must be inferred that there was no fund out of which the money claimed by the petitioners could have been paid by the College. It was to be paid from "the rents, issues, and profits." The nearest to an allegation that any rents and profits had been received from the land is that in reference to Mrs. Redfern: "Said Mrs. Redfern accepted the deed set out in the next preceding paragraph, and immediately went into possession of said land and collected the rents and profits thereof, which were very large, amounting to more than $4,000 each and every year since the death of said W. J. Proctor. Said Mrs. Redfern is now in possession of said land." Construing the allegation most strongly against the pleader, it can not be said that this allegation can be so extended as to include a charge that Wesleyan College had received any of the rents and profits. If it had not received any, there was nothing out of which the $100 per month could be paid. The language of the deed in that respect is: "A part of the consideration of this deed is the agreement on the part of Wesleyan College that it will pay the brother of W. J. Proctor, said brother being J. B. Proctor of Meigs, Thomas County, Georgia, the sum of one hundred dollars ($100.00) per month *from the rents, issues, and profits* of said realty from the date of the death of W. J. Proctor to the date of the death of J. B. Proctor. And in accepting this deed, said College hereby agrees to make *such payment.*" (Italics ours.) The obligation of Wesleyan College was thereby limited to paying J. B. Proctor from a specific fund, and there is no allegation that they ever received such a fund "from the rents, issues, and profits." Obviously, the words "such payment" in the last sentence quoted from the deed refer only to payment from such source, and do not add any additional liability to Wesleyan College. Such a provision, as shown in *Hitchcock* v. *Culver,* supra, does not reach the corpus; and it not being alleged that Wesleyan College received any rents,

issues, or profits from the land, the court did not err in sustaining the demurrer as to that defendant.

Is Mrs. Redfern liable? It is argued in the brief of the plaintiffs that she "assumed the charge," that such was the only consideration on which the property was conveyed to her by Wesleyan College. A copy of the deed from Wesleyan College to Mrs. Redfern is attached to the petition, and an examination of the deed discloses that "This indenture is made in settlement of any and all obligations of responsibilities on the part of the party of the first part of the said J. B. Proctor, by reason of the provision in the deed of W. J. Proctor, aforesaid, and the acceptance of said deed by the party of the first part; this quitclaim being made to the party of the second part, the daughter of the said J. B. Proctor, at his special instance and request," etc. In other words, the consideration was furnished by J. B. Proctor, to wit, his right to receive $100 per month from any rents and profits which Wesleyan College might receive from the land conveyed by W. J. Proctor. Evidently the daughter's ownership of the land was of more concern to him than his expectancy of annuities from the rents and profits, and Wesleyan College, for reasons satisfactory to itself, was willing to accept that consideration and deed the property to Mrs. Redfern at J. B. Proctor's "special instance and request." It is apparent that in accepting the deed she does not promise to do anything or to assume any charge, and the deed negatives the claim of the plaintiffs that the consideration was one from her, to wit, that she assumed the charge of paying the $100 per month. The consideration from J. B. Proctor, that is, giving up his right to any sum that might become due from Wesleyan College, was a sufficient consideration to support the deed to his daughter, Mrs. Redfern. No further consideration was necessary to the validity of the deed, and none was furnished by Mrs. Redfern. Upon the execution and delivery of the deed the right of Proctor to any amount from the rents and profits was wiped out. This deed was executed on October 27, 1932, but the record shows that on February 27, 1932, J. B. Proctor had quitclaimed to the plaintiffs in error "all claims in my equity, right, title, or interest in all of said property [that conveyed by W. J. Proctor to Wesleyan College], and all claims in my name may be made in the names of said children for the cancellation of said deed to Wesleyan College

and the last will of my brother, if his children desire to do so, and all my rights are transferred and quitclaimed to the parties aforesaid," etc.

It is urged by the plaintiffs that as this paper had been recorded when Mrs. Redfern took the deed from Wesleyan· College, she was charged with notice of it, and can not avoid payment of the annuities to them. It should be held that the record did not constitute notice to Mrs. Redfern, and there was no allegation that she had actual notice. The deed does not convey an interest in land, but only in personalty. Such a recorded deed is not notice to a subsequent purchaser without actual notice. Furthermore, the instrument was recorded, not in the residence of the maker, but in Muscogee County, and for that reason it was not notice to Mrs. Redfern. Code of 1933, § 29-413. Again, the paper was a voluntary conveyance. While it is recited that "in consideration of $1.00 and love and affection," etc., the interest was conveyed and quitclaimed to the nephews of J. B. Proctor, the nominal amount of one dollar does not necessarily make the conveyance other than voluntary. It is well settled that under such circumstances the intention of the parties may be ascertained, in determining whether or not a deed is a voluntary one. *Martin* v. *White*, 115 *Ga.* 866 (4) (42 S. E. 279); *Pierce* v. *Bemis*, 120 *Ga.* 536 (48 S. E. 128). The intention to make a gift without the payment of any money is, I think, evident from the concluding part of the instrument executed by J. B. Proctor, wherein it is recited: "I want my nephews to have everything that my brother tried to give or provide for me under the deed and will aforesaid, and I hope the authorities will give them all of my brother's property." So, even assuming that the instrument was a legal conveyance of whatever right J. B. Proctor had, Mrs. Redfern was not bound by it, and, under the agreement between J. B. Proctor and Wesleyan College, she took the property free from any obligation whatsoever. No responsibility rested upon her after she received the deed from Wesleyan College upon the consideration furnished by J. B. Proctor. It is, as to Mrs. Redfern, immaterial if Wesleyan College had actual notice of the quitclaim deed to the petitioners. "If one with notice shall sell to one without notice, the latter shall be protected." Code of 1933, § 37-114.

John G. Cozart, as executor of the will of W. J. Proctor, was named a party defendant, but it is stated in the brief of the plaintiffs that nothing is sought from him. The judgment sustaining the general demurrer and dismissing the petition should be affirmed.

### ON MOTION FOR REHEARING.

BECK, Presiding Justice. It is insisted by the movants that no recovery could be had against Wesleyan College, because it does not appear that Wesleyan College has ever received any of the rents and profits from this land. In the view we take of the case, this fact is immaterial. The clause under consideration was in the nature of a covenant running with the land *(Atlanta, Knoxville & Northern Railway Co.* v. *McKinney,* 124 *Ga.* 929, supra), and by it the land itself was charged with the payment of $100 monthly from rents and profits. The proper interpretation is not simply that the rents and profits were charged, but that the land itself was burdened with the obligation to pay the stipulated amount from the rents and profits. That is to say, the payments will be required so far as the rents and profits are sufficient, but not otherwise. The condition is whether the rents and profits are sufficient, and not whether such rents and profits have been received by the party sued. So far as they are sufficient for that purpose, the payments must be made. In *Hitchcock* v. *Culver,* supra, the deed expressly declared that there was no charge "upon the land itself." Since under the deed involved in the instant case there was a charge upon the land itself, the grantee and its successors in title are subject to be sued in equity by the beneficiary or his assigns. Wesleyan College in accepting the deed specifically agreed to pay the amounts from the rents and profits, and could not relieve itself from this obligation merely by conveying its rights to another, even though it did not afterwards receive the rents and profits. But it is further contended that the petition was fatally defective for other reasons, and that its dismissal should be affirmed regardless of the reason given by the judge. It is insisted that the college made its conveyance to Mrs. Redfern at the instance of J. B. Proctor, the original beneficiary, and in settlement of all obligation to him; and that, since this conveyance was made without any notice either to the college or to Mrs. Redfern that J. B. Proctor had assigned his interest to these plaintiffs, there

can be no recovery against either defendant, and consequently the judgment dismissing the action should be affirmed. There is no merit in this contention. The petition is being considered on demurrer, and the allegations must be taken as true. The assignment by J. B. Proctor to these plaintiffs recites a consideration of $1, and the other portions of it do not completely negative this recital. The assignment, therefore, does not appear upon its face to be voluntary. *Martin* v. *White,* 115 *Ga.* 866 (supra); *Morris* v. *Mobley,* 171 *Ga.* 224 (7) (155 S. E. 8). Since the clause now under consideration was in the nature of a covenant running with the land and charged the land with compliance with it, the beneficiary had an equitable interest in the land, and the instrument by which he assigned and conveyed his interest to the plaintiffs was the equivalent of a deed to real estate, and as such was recordable under the law in the county where the land was situated. Its record therefore amounted to constructive notice to the defendants, and the subsequent transaction between the assignor and these defendants was necessarily subject to the rights held by the plaintiffs under the assignment.

Furthermore, in paragraph 6 of the petition, it was alleged that the conveyance and assignment to the plaintiffs was "immediately" recorded; and in paragraph 8, that "actual notice of said conveyance and assignment from J. B. Proctor to petitioners was immediately given to said college." So much as to Wesleyan College. In paragraph 9 it was alleged as to Mrs. Redfern, that "since she took with full notice of said equitable lien and charge in favor of petitioners, she took said land and holds the same subject to said charge and lien." As against a mere general demurrer these averments were sufficient to allege that each of the defendants had actual notice of the plaintiffs' rights at the time of the transaction between them and J. B. Proctor. Should it appear upon the trial that the assignment made to the plaintiffs by J. B. Proctor was in fact voluntary, and that neither defendant had actual notice of such assignment at the time of the subsequent transaction with J. B. Proctor, a different case might be presented.

*Motion for rehearing denied. All the Justices concur, except Gilbert, J., who dissents.*