Beck, Presiding Justice.
On December 10, 1928, W. J. Proctor executed and delivered to Wesleyan College a deed conveying certain described real estate in Muscogee County, Georgia, in -which is the recital: “W. J. Proctor hereby reserves the rents, issues, and profits and possessions from, in, and to land hereby conveyed for his natural life, but the title to all the real estate is hereby vested in said college eo instanti. A part of the consideration of this deed is the agreement on the part of Wesleyan College that it will pay to the brother of W. J. Proctor, said brother being J. B. Proctor of Meigs, Thomas County, Georgia, the sum of one hundred dollars per month from the rents, issues, and profits of said realty from the date of the death of W. J. Proctor to the date of the death of J. B. Proctor. And in accepting this deed said college hereby agrees to make such payment.” W. J. Proctor died on February 22, 1932, and Wesleyan College went into possession of the land under the deed referred to. On February 27, 1932, J. B. Proctor, for the stated consideration of one dollar and his love and affection for the children of his deceased brother, W. J. Proctor, executed a deed containing the following recital: “I hereby convey and quitclaim unto the children of my brother, W. J. Proctor, to wit, Ernest C. Proctor, George W. Proctor, Frank B. Proctor, and Henry S. Proctor, all of my equity, right, title, or interest in all of [the property referred to above], . . and all my rights are transferred and quitclaimed to the parties aforesaid; and while quitclaiming it all to them, I do not guarantee or warrant anything or any rights under said instruments whatever.” On October 7, 1932, Wesleyan College, for the stated consideration of one dollar “and in settlement of any and all obligations or responsibilities on the part of Wesleyan College to said J. B. Proctor, aforesaid, and the acceptance of said deed by the party of the first part,” *177 released and quitclaimed the land unto Mrs. Katie Proctor Red-fern. The children of W. J. Proctor above mentioned, to whom J. B. Proctor had executed his quitclaim deed, brought suit against Wesleyan College, Mrs. Katie Proctor Redfern, and John G. Cozart as executor of the last will of W. J. Proctor, alleging the facts set forth above, and in addition alleging that no payments had been made to J. B. Proctor or to plaintiffs, as stipulated in W. J. Proctor’s deed, either by Wesleyan College or by Mrs. Katie Proctor Redfern, although the rents, issues, and profits from said land amounted to some four thousand dollars each and every year. They prayed for judgment against Wesleyan College and Mrs. Red-fern for $100 per month from the date of the death of W. J. Proctor to the date of verdict, and from the date of verdict until the death of J. B. Proctor; that this judgment be made a special lien on the land described; and for other equitable relief. Each of the defendants filed a general demurrer to the petition. The demurrers were sustained and the case was dismissed. The plaintiffs excepted.
The judge, in rendering his opinion sustaining the general demurrers, said: <eWhere A deeds land to B, part of the consideration being a promise by B to A to pay an annuity to C, a stranger to the contract, suit may be maintained by A against B for failure to pay the annuity, but can not be maintained by C in his own name. C being an utter stranger to the contract, furnishing none of the consideration, and no trust being created for his benefit under the terms of the contract, he can not maintain a suit for the breach of the contract;” citing Shropshire v. Rainey, 150 Ga. 566, 574 (104 S. E. 414), and Code of 1933, § 3-108. The case before us presents this question: Where A conveys land to B, reserving in the deed the rents, issues, and profits to himself for life, and providing in the deed that after his death B shall pay to C for life one hundred dollars per month from the rents, issues, and profits from the land, can C enforce the provisions made for him in said deed? And if C can enforce the provisions made for him in the deed, can his assignee of these rents, issues, and profits maintain a suit against B and any grantee in a deed made by B conveying the land, to enforce and collect the annuity provided out of the rents, issues, and profits? In Story’s Equity Jurisprudence (3d ed.) 524, § 1244, in chapter 32 dealing with implied trusts, the author *178 says: “Another class of implied liens or trusts arises, where property is conveyed inter vivos, or is bequeathed or devised by last will and testament, subject to a charge for the payment of debts, or to other charges in favor of third persons. In such cases, although the charge is treated, as between the immediate parties to the original instrument, as an express trust in the property, which may be enforced by such parties or their proper representatives; yet, as between the trustees and cestuis que trust, who are to take the benefits of the instrument, it constitutes an implied or constructive trust only; a trust raised by courts of equity in their favor, as an interest in rem, capable of being enforced by them directly by a suit brought in their own names and right. Thus, for example, if a devise is made of real estate, charged with the payment of debts generally, it may be enforced by any one or more creditors against the devisee, although there is no privity of contract between him and them.” In 3 Pomeroy’s Equity Jurisprudence (4th ed.), § 1244, it is said: “Another species of equitable lien not growing out of contract directly between the parties arises when specific property— a lot of land, a fund or securities, or the land contained in a residuary devise — is conveyed, devised, or bequeathed subject to or charged with the payment of debts, legacies, portions, or annuities in favor of third persons given by the same instrument. The legal title to the property vests in the grantee, devisee, or other recipient, but a lien thereon is created in favor of the beneficiary named, which can be enforced in equity. . . Such charges may be contained in conveyances inter vivos, and are sometimes found in family settlements, real estate settled upon sons being charged with the payment of portions in favor of daughters, and the like. The)'are much more frequently, especially in this country, found in wills.” In Eedfearn on Wills, the author says; “A charge is most often found in cases where the testator has given property to one person with the provision that he pay a certain sum to another person, or furnish a support to some one for a named period of time.” This court has often considered and enforced such provisions.
In Dallas v. Heard, 32 Ga. 604, Lucinda Lane conveyed certain real and personal property to the defendants upon the consideration that they would pay her debts and pay her an annuity of $350 a year. A suit was brought by a creditor to enforce that provision. This court, after holding that the life-estate of Lucinda Lane in *179 the .property was bound for the payment of this debt while in her hands and before assignment to defendants, said: “The next question, as to whether the plaintiff, he being no party to the agreement, can enforce this agreement against these defendants, in equitjq is one which is no longer open, for it is controlled by the decision of. this court” in Bell v. McGrady, 32 Ga. 257. “The firm, Gardner & Kendrick, parties in a livery-stable, buggies and horses, etc., sold and conveyed the livery-stable and their entire stock to McGrady, one of the defendants, McGrady agreeing, in part consideration of such purchase, to pay all the debts and liabilities of the firm of Gardner & Kendrick. Bell, the holder of a note on Gardner & Kendrick, filed his bill against McGrady to compel a payment of the note on Gardner & Kendrick, both of whom were insolvent. This court, on demurrer, sustained the bill, holding that 'it was proper for this creditor to go into equity to enforce this agreement in behalf of himself and others.’ Behind a decision directly in point, as we hold this to be, this court will not go. In that case, Gardner & Kendrick, as Mrs. Lane in this, had parted with the entire dominion of the property. The agreement was not a mere declaration of intention in favor of the creditors, that might be recalled or controlled by the grantor; but it was an executed trust.” In Bell v. McGrady, supra, this court said: “We think the bill in this case well brought. McGrady, by virtue of his agreement with Gardner & Kendrick, became trustee to pay their debts.” In Maxwell v. Hoppie, 70 Ga. 152, 159, it was said: “This court, in Hunter v. Stembridge, 12 Ga. 192, held that where a testator by his will devised to his son Henry the plantation whereon he lived, in fee, and after bequeathing a negro woman to his wife during her life, used the following words: 'and I also allow my son Henry to give her a support off my plantation during her life time,’ that the testator used the word 'allow’ as expressive of his intention, that his said son should support the wife during her life, off the plantation, and that Henry took the same under the will subject to that charge, which a court of equity will enforce. It is immaterial that all the foregoing were cases arising under wills. The sections quoted above from our Code do not confine the rules therein prescribed to wills, but apply them to all contracts or agreements, and other transactions by which a trust is declared in writing.” And in Maxwell v. Hoppie, this *180 court said: “Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity, raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice,” citing 1 Perry on Trusts, § 82. It was also held that the intention of the parties must in every instance control.
In Featherstone v. Richardson, 68 Ga. 501, where the deed, after expressing a nominal consideration, also expressed the further consideration that the grantee was to pay off and discharge certain mortgages, it was held that “the deed conveyed the title in trust for the purpose of paying off the mortgages, and with the vesting of an absolute title, conditioned upon the grantee’s performance thereof.” An undertaking on the part of a mortgagee, in consideration of the execution and delivery to him by the mortgagor of a deed to the mortgaged property, to sell the same within a given time, and turn the proceeds, after making certain deductions, over to a named person, was held, in Lake v. Freer, 11 Ill. App. 576, to create a valid express trust in his favor. In Jones v. Lloyd, 117 Ill. 597 (7 N. E. 119), it was held that where one takes a conveyance of laird upon an agreement to support the grantor, and to convey a designated portion to the minor sons of the grantor who are to remain and work on the place, and the sons remain and work as agreed, he takes in trust for the sons as to the designated portion. In Blanchard v. Chapman, 22 Ill. App. 341, it was held that where one gives property absolutely, but with words suggesting or recommending that it be disposed of in favor of another, those words will create a trust where considered together they ought to be construed as imperative, the subject of the recommendation and the person to be benefited being certain. See McCreary v. Gewinner, 103 Ga. 528 (29 S. E. 960), where the decisions above referred to are cited approvingly. In Gordon v. Green, 10 Ga. 534, it was said: “It was agreed between A and B, that if B would undertake the management of A’s affairs and collect in certain funds due to her, that 'B should retain, out of the first money received on her account, the amount of $1,000, five hundred of which was to be' his then, and the remaining five hundred he was 'to retain and use *181 as his own, but at her death was to pay over to 0 the amount of the five hundred dollars, without interest:’ Held, that this agreement created a gift to B in trust for the use of C, to be paid to C at the death of A, without accountability fox interest. . . No particular form of words is necessary to create a trust. It will be sufficient if the intention be manifest that the donee shall not have the sole beneficial interest in the property.” In Hitchcock v. Culver, 107 Ga. 184 (33 S. E. 35), this court said: “The deed declared, among other things, that the grantees in accepting the same agreed to furnish Mrs. Thomas, ‘during her lifetime, annually, from time to time as she may demand it, a sufficiency of food and clothing and other actual necessaries suitable to her condition in life, and this support is made a charge upon the annual rents, issues and profits of said land, but not upon the land itself.’” In the case before us the deed provided that the grantee should pay J. B. Proctor during his life one hundred dollars per month from the rents, issues, and profits of the land. In Bell v. Watkins, 104 Ga. 345 (30 S. E. 756), the testator gave certain land to his daughters. He then declared: “I further .will that my granddaughter, Mamie M. Bell, do receive a support during her life, or until she should marry.” The court held: “That the testator intended to charge his estate in the hands of his three daughters . . with the support of his granddaughter, . . and that this charge would follow the real estate into the hands of a purchaser from the executors, unless it was legally sold by them to pay the debts of the testator.” “A devise or bequest upon condition of making payment to third persons is usually equivalent to a devise or bequest upon a trust.” Prince v. Barrow, 120 Ga. 810 (48 S. E. 412).
Some of the eases from which the foregoing quotations are taken and some of those cited may not be identical with the instant case on all the facts thereof, but they are substantially similar to the case we are now considering, and so similar that the rulings made and the reasons given for the rulings made are applicable to this case; and we are satisfied the principles announced are sound under our law. We are therefore reversing the ruling of the court below, sustaining the general demurrer to the petition/

Judgment reversed.

All the Justices concur, except