## COMMISSIONER OF INTERNAL REVENUE v. CITIZENS & SOUTHERN NAT. BANK.

### No. 11137.

Circuit Court of Appeals, Fifth Circuit.

Feb. 24, 1945.

---

[4] I.C.C. Rule 76, Transit Circular 17(a), 18 I.C.C. 280, 24 I.C.C. 340, 26 I.C.C. 204.

[5] Armour & Co. v. Delaware, L. & W. R. Co., 101 I.C.C. 337.

I. Henry Kutz, Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

R. B. Troutman, Furman Smith, Hughes Spalding, and John A. Sibley, all of Atlanta, Ga., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The taxpayer, executor under a will leaving all of testator's property, subject to special bequests [1] payable out of income, to a charitable foundation,[2] to use the income for "charity purposes", claimed deductions in 1936, 1937, 1938 and 1939 for payment of the bequests as allowable under Sections 162(b) or (c), amounts distributa-

---

[1] If living at the death of the testator: To Miss Champion, $5000.00 per annum, to Mrs. Marlowe, $7520.00 per annum, for twenty years, provided they live that long; If not living, to the Foundation. As to these bequests, the will provided that the Foundation should take the property subject to them, and that they be paid before the disbursements to charity, "and that such special bequests are to be paid by the Foundation from the income from my estate turned over to it by my executors".

[2] The will recited that the Foundation was created "as a memorial to my father, Joseph B. Whitehead, whose name I bear, for the purpose of the income from said estate to be used by the poor and needy of the community in which he lived and died, and in which I was reared as a child". It further provided "as soon as possible after my death, my executors" shall charter a corporation, "to be known as the Joseph B. Whitehead Foundation, and upon the granting of the Order of Incorporation, I direct that my executors shall deliver; transfer and deed to such corporation to be known as the Joseph B. Whitehead Foundation, all of the stock, bonds and other property, whether the same be real, personal or mixed, of which I may die seized, provided the same has not been sold by my executors as hereintofore set forth and subject to the special bequests hereinafter made. All of said property to be held by said Joseph B. Whitehead Foundation and the income from the same to be used as herein set forth."

It further provided: "Said trustees or directors of the Foundation shall use the income from the property turned over to it by my executors, as herein set forth", One-fourth of it for disbursement to deserving orphans' homes. "The balance of the income from my property held by said Foundation, after the payment of the special bequests hereinafter made, I direct to be used for charity purposes and in the relief of pain and suffering and poverty". Then follow some general suggestions as to organizations which were proper subjects of help, and, "The Foundation * * may, in its discretion, disburse funds to individuals who are deserving and to other deserving institutions such as schools, whether the same be public or private, and, in fact, any worthy and deserving individual, association or institution that said Trustees may deem worthy and in need of the funds herein provided for without regard to race, color or creed."

ble currently to beneficiaries, and the balance as paid or permanently set aside for charitable uses pursuant to the will, and, therefore, allowable under Section 162(a), Rev. Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Code, § 162(a–c).[3] The commissioner disallowed the deduction claims on the grounds: (1) that part of the income from the property, being by the will dedicated to the payment of bequests to persons not the subject of charity, the Foundation was not a charitable corporation under Section 23(c) (3) and (o) (2), Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 828, 829; (2) that if it was such a corporation, the amounts paid out of the income and claimed as deductible under 162(a) were not so deductible because having been paid to discharge debts and obligations of the Estate, they had not, within the meaning of the statute, been paid or permanently set aside during the taxable year exclusively for charitable purposes; and (3) that the sums which had been paid out of income to satisfy the bequests were not deductible because they had not been paid by the Foundation as directed in the will but by the executors, who had no authority under the will to pay them.

As a result of these disallowances, taxpayer and commissioner, like the lion and the unicorn fighting for the crown, have, since March, 1941, when the deficiency letter, disallowing the claimed deductions, was mailed, been contending over quite sizeable sums, $290,028.13, $286,319.77, $246,698.07, $253,083.49, claimed as income taxes for 1936, 1937, 1938 and 1939. In the Tax Court, the taxpayer beating the commissioner, as the lion had "beat the unicorn, all around the town", came off fully victor. In an opinion[4] setting the facts[5] out with great fullness, the Tax Court carefully and fully canvassed the contentions of, and the authorities cited by, the parties. Pointing out that tax provisions granting exemptions in respect of charities spring from profound concern for human welfare and are, therefore, liberally construed,[6] and that the test of the propriety of the claimed deductions is furnished by the terms of the will and not by

[3] "§ 162. Net Income. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit."

[4] 3 T.C. 40.

[5] For the purpose of this opinion, it is sufficient to say that these are:

(1) That beyond a shadow of question the Foundation was intended to be, and was, a charitable trust and, subject to the special bequests, the will devised all the property to the Foundation and devoted all of the income from the property to charitable uses.

(2) That the situation of his estate, as to cash on hand and obligations against it, was such at the time of his death as that, taken in connection with the terms of the will set out hereinabove in Note 2,

it is entirely clear that the testator expected his cash assets to be sufficient to discharge all obligations and the estate to be almost immediately closed, and that he never intended, nor directed, that the income should be used to defray corpus or capital charges.

(3) The change in the situation which resulted in the creation of heavy capital charges against his estate beyond the cash to pay them came from a suit of his estranged wife and the settlement with her by paying her $500,000.00 in cash. The use by the executors of income to pay these charges was not authorized by the will, indeed was forbidden by it because the will had apportioned all of the income, except that to pay the bequests, to charitable uses.

(4) The payments by the executors direct to Miss Champion and Mrs. Marlowe, instead of first paying it over to the Foundation and having the Foundation pay it was not a substantial departure from the terms of the will, and the moneys so paid were properly deductible.

[6] Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207; Old Colony Trust Co. v. Commissioner of Internal Revenue, 301 U.S. 379, 57 S. Ct. 813, 81 L.Ed. 1169; Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564; Beggs v. United States, 27 F.Supp. 599, 89 Ct.Cl. 39; Harrison v. Barker Annuity Fund, 7 Cir., 90 F.2d 286, 289.

what was done under it by the executor,[7] it determined all of the issues in taxpayer's favor, rejected the disallowances, and found no deficiencies.

The commissioner, here with a long brief and much argument, insists that: claimed deductions, being matter of grace, must be precisely and clearly brought within the statutes allowing them; that those claimed here, if brought within the statute at all, were so brought only by a strained and unnatural construction; and that the Tax Court was, therefore, wrong.

The taxpayer sees the matter more simply and, we think, more as it is. He insists that it would be difficult to imagine a charitable corporation more clearly within Section 23(o). He urges upon us that the fact that the will charged a very small part of the very large income with the payment of bequests can not deprive it of that character, and particularly of the exemption extended by Sec. 162(a).[8] As to the claim that the use of the income by the executor to defray corpus charges has subjected the charity to taxes on income which the statute expressly exempts from tax, taxpayer, citing cases the Tax Court cites, urges that it is the terms of the will and not what the executor does with the income which determines the exemption, and that the use by the executor of income for purposes not authorized by the will[9] cannot make taxable, income which will and statute have made exempt. But taxpayer doesn't stop here. He argues further that in fact and in law the funds were paid or permanently set over to charitable uses in that, by mere temporary transfer from the income account to the corpus account, they discharged claims against the corpus and saved property itself devised to charity.[10] As to the payments out of income directly to the legatees, taxpayer points out that these payments were all charged by the will on the income, and by it directed to be paid annually out of income turned over by the executor to the Foundation. It insists that the fact that the income went directly from executor to legatees instead of by a double play, as provided in the will, from executor to Foundation to legatees is, if a departure from the will, a purely technical one, which cannot in any manner change the fact that these payments directly charged by the will against the income and to be paid out of it annually were in fact so paid, and were, therefore, proper deductions.

We agree with the taxpayer. The Tax Court in its opinion has fully set the facts out, and has elaborately treated the questions of law here raised, and that opinion has our approval. We will not, therefore, further labor the points there discussed. We find it sufficient to say that the terms of the will, the facts surrounding its execution and administration, and the condition of the estate at testator's death, leave us in no doubt that his purpose to create a charitable trust, to devise to it, subject only to the payment of his known debts for which he had ample cash on hand, all of his property, and, subject to the payment out of it of certain small bequests, to dedicate and devote the entire income therefrom to charitable uses, has been sufficiently indicated and must be given effect. Neither are we in any doubt that in creating the foundation and in protecting the corpus against the unforeseen contingencies which arose after death, the executor, by defraying corpus charges out of income, has not deprived the charity of the exemption the will and statute conferred whether the view is taken that the use of the income to pay corpus charges was a charitable use or the view that it was not, but, being unauthorized by the will, it was a diversionary act of the executor without effect. The fact that the very large income was charged with the payment of very small bequests does not in any way alter the controlling fact that the will devised the whole corpus and, except for the bequests, the whole income to charity, and that the Foundation was therefore such a corporation as is described in Sec. 23(o). Neither

---

[7] Bowers v. Slocum, 2 Cir., 20 F.2d 350; Eagan v. Commissioner of Internal Revenue, 5 Cir., 43 F.2d 881, 71 A.L.R. 863.

[8] Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L.Ed. 99. Cf. Proctor v. Redfern, 182 Ga. 175, 185 S.E. 255.

[9] Rachels v. Wimbish, 31 Ga. 214, 222; 33 Am.Jur. 806; Scott on Trusts, Vol. 2, Sec. 234.3 and 234.4; Bowers v. Slocum, 2 Cir., 20 F.2d 350; Commissioner of Internal Revenue v. Upjohn's Estate, 6 Cir., 124 F.2d 73; Commissioner of Internal Revenue v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788.

[10] Rachels v. Wimbish, 31 Ga. 214; Commissioner of Internal Revenue v. Upjohn's Estate, 6 Cir., 124 F.2d 73; Bowers v. Slocum, 2 Cir., 20 F.2d 350.

·does the fact that part of the income was temporarily diverted to defray corpus charges affect the dedication to charity provided by the will, or subject the exempt income to tax. Finally, as to the payments of the bequest by the executor, we think it clear that the fact that they were paid by the executor instead of by the Foundation is wholly immaterial. The Tax Court's judgment was right. It is

Affirmed.